Gaston, J.
 

 At the August Term, 1841, of Moore Superior Court, the relator, John B. Kelly, exhibited a petition in said court, wherein he alleged that, at the February Term, 1838, of the Court of Pleas and Quarter Sessions of said
 
 *431
 
 county, a majority of the Justices of the county being present, an order was duly made for building a new CourtHouse for the county, and the petitioner and others named in the petition were appointed, commissioners to carry said order into effect, and to contract with some fit person fordo-ing the contemplated work; that the commissioners, in pursuance of the authority so given, contracted with Dabney Cosby, to perform all the labor, and furnish all the materials required, at the price of five thousand dollars, to be paid at the discretion of the commissioners as-the work progressed; that a considerable portion of the work being, done, and Cosby requiring a payment, the said court', at February Term, 1839, authorized the said commissioners to raise money by a loan from any of the banks, pledging the faith of the county for the payment of the money borrowed; that the commissioners accordingly offered their own note for discount at the Bank of Cape Fear, and thus obtained a loan for g2,OGO, and paid over this money to Cosby; that this note has been several times renewed on payment of instal-ments, which payments were made by the eounly, until it was reduced to a sum between- three and four hundred dollars, and that it was then due, unpaid, and under protest. The petitioner further alleged that the Court-House having been completed and received by the county, and the said Cosby being urgent for the payment of- the balance due him on account thereof, and the commissioners being without funds for making the payment, the petitioner and the rest of the commissioners (with the exception of one who had left the State,) relying on the authority given by the justices of said county, and on the pledge of the public faith, did, on the 26th October, 1839, execute anote, “in behalf of the county and as commissioners” to the said Cosby, for $2,957 73, with interest from that date; that the said Cosby, contending that the commissioners who had executed that note had rendered themselves personally responsible, had brought suit thereon against them, and should he obtain judgment, the petitioner would be grieviously oppressed, and the character of the county injured and degraded. The petitioner stated further, that upon his application, the County Court, at its
 
 *432
 
 February Term, 1841, a majority of the justices being present, duly passed an order laying a tax of fifty cents on the poll, and fifty cents
 
 on every three
 
 hundred dollars’ worth of yeal estate, to raise a part of the fund for payment of the debt due to Cosby, and the balance due the bank, in addition to a tax or rate of eighty-five cents levied for county purposes; but that, at the August Term thereafter, a majority of the justices being present, the justices rescinded the order for laying a tax for the purpose of paying what was due to Cosby and the bank, and that at the time of preferring the petition there was no tax for raising funds to discharge these demands. The prayer of the petition was for a mandamus to be directed to the justices of the county of Moore, commanding them to impose a tax for that purpose, or shew cause wherefore they declined and refused so to do; and the petition set forth the names of
 
 the
 
 said justices, (35 in number) and prayed that the said writ might be served on each of them. Upon this petition the alternative writ of mandamus issued as prayed for, returnable to the following term, when it appears, that eight of the said justices filed what is called their return to the said mandamus, stating in substance, that they have read the petition, admit the facts to be true, have no cause to shew against the mandamus, are ready to proceed to the levying of a tax, but are unable to do so because a majority of the justices of the county refuse to concur in said act. The rest of the justices, constituting a large majority of the whole body, made their joint return to the mandamus, in which they shew, for cause against the levying of the tax therein directed, that at the February Term, 1838, of the County Court of Moore, the justices, a majority being present, had imposed a sufficient tax to defray the expenses of building the Court-House; that the tax had been collected by the sheriff, but not accounted for; that the justices had caused legal proceedings to be instituted against the sheriff and his sureties to recover the moneys so collected, which proceedings were in a vigorous course of prosecution, and as the respondents hoped aud believed would result in bringing into the County Treasury funds amply sufficient to meet .all demands against the county; and further,
 
 *433
 
 that the court, at its August Term, 1841, had repealed the special tax imposed as in the petition stated at the preceding February Term, because said special tax had been irregular* ly imposed, after a portion of the justices present at levying the general county tax had left the bench, and because it was deemed by them oppressive to the people of the county,- and was disapproved by a large majority thereof; and that the respondents are unwilling to impose any further tax to pay for the Court-House, until a reasonable opportunity shall be had to render available the tax heretofore levied and collected by the sheriff, and for the recovery Of which suits are now prosecuted: and that they have imposed a sufficient tax to pay the bank debt set forth in the petition. And the respondents further shewed, that no application had been made to the County Court in behalf of Dabney Cosby, the credit- or, for levying a tax
 
 to
 
 raise funds for payment of his demands; that nothing is due from the county to the relator, and that he has no legal interest in the subject matter of this writ, or right to ask for this extraordinary interference of the court; that the power of laying taxes for county uses is in the nature of a legislative power, to.be exercised according to the sound discretion of the justices of the county, and that, in the exercise of this discretion, according to their honest judgment, and within the legitimate bounds thereof, they are not accountable; and that, in the measures which they have taken for raising the necessary funds, they have fully performed all that duty required of them.
 

 Upon argument it was held that the reasons shewn against the mandamus, were insufficient, and that a peremptory mandamus issue. From this judgment an appeal was prayed by the respondents, who had resisted the mandamus, the other eight justices refusing to join in the said appeal, and the same was granted as prayed.
 

 It has been moved here, on the part of the relator, to dismiss this appeal; because, as is alleged, the judgment rendered in the Superior Court is a joint judgment against all the justices of the county of Moore, and the appeal has been allowed at the instance of part of them only. The cases of
 
 Hicks
 
 v Gilliam, 4 Dev. 217, and
 
 Dunns
 
 & Co. v
 
 Jones,
 
 
 *434
 

 Administrator of
 
 Ward, 4 Dev. & Bat. 154, arc relied upon as authorities decisively supporting this motion. It is clearly settled by these cases, that, if a joint judgment be rendered in a civil suit against the plaintiffs or defendants therein, a part of' those aggrieved by the judgment cannot appeal therefrom. And these decisions are avowedly founded on the principle, that an appeal from a judgment vacates that judgment
 
 in
 
 loto, and, therefore, must be taken by all bound thereby or it cannot be taken at all. But the present case, in our opinion, falls neither within the rule thus sanctioned, nor the reason of the rule, This is not an action prosecuted against several’persons, as individuals, and of a joint judgment rendered against them all, but it is a proceeding to compel the performance of an alleged duty by a municipal body, which acts only through the medium of a majority of its members, and whose action, when done, binds ,the body, as such, and- not the individuals of whom it is composed. This proceeding has been opposed and defended by that body for the reasons set forth in the return to the alternative mandamus by the majority of its members, and, . judgment having been rendered against the sufficiency of that return, the body, through the agency of the same majority, appeals for the revision of the sentence thus pronounced. The writ of mandamus, when ordered to issue, must of course be directed to all the justices, because it is the justices, as a body, who alone can execute it. But
 
 this
 
 does not shew, that the judgment, by which it is ordered to issue, is in the nature of a joint judgment against several. In the case cited on a former occasion
 
 (State
 
 v Jones, 1 Ired. 135) from 2d Chitty’s Reports, 254, when an application was made by a church-warden against his colleague to compel him to concur in a rate with the overseers, the court said, “ you must take the mandamus against the whole of the parish officers, against yourselves as well as the other overseers.” Surely it will not be contended that the judgment, awarding this mandamus, was a judgment against the' relator individually, or that, in a like case, if an appeal had been allowed to the party grieved, the relator must concur in the appeal. The statement made upon the record by the
 
 *435
 
 eight justices is not a return. As a minority they arc
 
 wholly inefficient
 
 to act. They were inefficient to lay the tax, be cause overruled by the majority; and they are equally inefficient to make a return, or to prevent an appeal, because , , , , overruled by the same majority.
 

 This motion having been denied, many very interesting questions were made by the counsel on both sides, in relation to the matters involved in the proceedings below, and were learnedly and ingeniously argued. As, in our judgment, there is one clear ground, upon which the decision below must be reversed, and as we entertain a strong hope that what justice and honor may demand will be done, without the necessity of our interference hereafter, we forbear from expressing an opinion upon most of these points.
 

 The application is at the instance of Mr. Kelly, as an individual relator, to compel the justices of the County Court of Moore to lay a tax to relieve him from a liability, which he fears that he may have incurred, to pay a debt that ought to be paid by the county. Now we bold it to be elementary doctrine, in support of which it is needless to refer fo any of the very numerous adjudged cases that acknowledge and sanction it, that the writ of mandamus will not be granted to a relator for bis relief, except where he has a
 
 specific legal right,
 
 and has no other specific remedy adequate to enforce it. Here Mr. Kelly has
 
 no right
 
 to this money. He is not a creditor of the county. According to his own shewing, he is not even liable for the county. lie expressly declares that he signed the note “in behalf of the county and as one of its commissioners,” and although he states that Cosby
 
 ‘contends
 
 that he is personally liable, he does not admit that liability. It seems to us, therefore, that the court could not rightfully move in this case, at his instance. We think that the judgment below is erroneous and ought to be reversed, and that the defendants ought to have judgment to go without day — and to recover their costs against the relator.
 

 Per Curiam, Judgment reversed.