W. T. LYON and G. B. ROYSTER v. THE BOARD OF COMMISSIONERS OF GRANVILLE COUNTY.

*Mandamus—Quo Warranto—Ejection from Office—Restoration to Office—Clear Legal Title to Office.*

Where a plaintiff sues for an office occupied by another, his remedy is an action in the nature of *quo warranto.* If he sues to be restored to an unoccupied office, his remedy is an action for a mandamus, and he must show that he has a *present clear legal* right to the thing claimed, and that it is the duty of the defendant to render it to him. (Clark and Montgomery, J. J., dissenting.)

(Syllabus by Faircloth, C. J.)

CIVIL ACTION, for *mandamus*, tried before *Allen, J.,* at January Term, 1897, of GRANVILLE Superior Court, on an agreed statement of facts which are summarized in the opinion of the court.   His Honor adjudged as follows: "That the plaintiffs, W. T. Lyon and G. B. Royster, are entitled to be forthwith reinstated and restored to their said office as Commissioners, and the said defendants are ordered and directed forthwith, upon the service of a copy of this decree upon them by the sheriff of Granville county, which copy shall be made and prepared by the Clerk of this court, to reinstate, reinduct and restore said W. T. Lyon and G. B. Royster to their said offices, and likewise permit said plaintiffs to be and act in all respects as Commissioners of said county, and as such to participate in the meetings of said board during the time specified in the order of Judge Graham, appointing to said office heretofore referred to.   And it is ordered, considered and adjudged that plaintiffs recover of the defendants the costs of this action in this behalf incurred, to be taxed by the Clerk, and that a peremptory writ of mandamus issue commanding that, forthwith and without excuse or delay, the defendant above named comply with the terms of this judgment and decree, and meanwhile and until said judgment and decree is fully complied with these defendants, and each of them, are enjoined and restrained as heretofore." From this judgment defendants appealed.

The cause had previously been heard bfore *Graham, J.,* at CHAMBERS, in Oxford, on 28th day of December, 1896, on application for *mandamus* and injunction, and the answer of the defendants having raised certain issues, they were transferred to the January Term for trial, but in the meanwhile defendants were restrained from paying out any money or incurring any debts or accepting official bonds except upon the concurrence of as many as four of the

board. From so much of such order as so restrained the defendants they appealed, and from the order transferring the cause to the Superior Court in term time the plaintiffs appealed.

*Messrs. Winston, Fuller & Biggs*, for plaintiff.
*Messrs. Edwards & Royster* and *Mr. J. B. Batchelor*, for defendants.

FAIRCLOTH, C. J.: The plaintiffs instituted this action alleging that they were *duly and legally* appointed Commissioners of Granville county by the Resident Judge of the 5th Judicial District, by virtue of the power vested in him by the Act of 1895, Ch. 135, praying for a *mandamus* compelling the defendants to restore them to their said office and to permit them to participate in all respects in the deliberations of the Board of Commissioners for the county. The defendants deny the plaintiffs right to be inducted into office on the ground that the judge had no authority to make the appointment, and that the same was void in law. Section 5, of the said Act is in these words:

"That whenever as many as five electors of the county make affidavit before the Clerk of the Superior Court, at any time after the election of the County Commissioners, that they verily believe that the business of the county, if left entirely in the hands of the three Commissioners elected by the people, will be improperly managed, that then upon the petition of two hundred electors of said county, one-half of whom shall be freeholders and so certified by the Clerk of the Superior Court, made to the judge of the district, or judge presiding therein, it shall be the duty of said judge to appoint two honest and discreet citizens of said county, who shall be of a political party different from that of a majority of the Board of Commissioners, who

shall, from their appointment and qualification, by taking the oath required for County Commissioners, be members of said Board of Commissioners in every respect,'' &c.

*Facts:* From the confused proceedings, it appears that five electors appeared before the Clerk and offered to file a written affidavit, as required by the said Act, with a list of petitioners. The clerk declined to receive the papers, as not being in proper form. The affiants made an affidavit before the Judge at Chambers, certifying to the clerk's refusal. Notice was issued by the judge to the clerk to show cause why he did not accept the oath and affidavit offered. The clerk certified that two hundred electors had not signed the petition, and that among those who had signed there were not one hundred freeholders. The judge allowed the petitioners to amend the petition with other names to supply those from two townships from which the books were not in the office. The judge then ordered the tax books and registration books to be brought into court, and, upon examination of the books and from oral testimony, "the court doth find as a fact that more than two hundred electors of said county, of whom more than one hundred are freeholders in said county, have signed said petition." The judge then ordered the clerk to "forthwith" certify to said one hundred persons being freeholders and return said petition and all other papers in the case to said court "at once." The clerk refused to so certify. The judge then appointed the plaintiffs Commissioners of Granville County "with all the powers and duties of a Commissioner of said county."

The plaintiffs and defendants met together, organized and transacted some business for an hour or two, when defendants, being of opinion that the appointment of the plaintiffs was invalid and void, declined to recognize them as members of the board, and to allow them to participate

in their meetings, and this action is brought to reinstate the plaintiffs and have their right declared by the court.

The written statements, from which the above facts are extracted, were offered in evidence on the trial, but excluded by his Honor, and the defendants excepted and appealed.

The identical facts, more in detail, will be found in the case of *Waller* v. *Sikes*, decided at this term. These facts were offered for the purpose of showing that the District Judge had no jurisdiction of the matter, when he appointed the plaintiffs as above recited and that his action was void. No summons had issued and there was no action pending in which said appointment was made.

We will not indulge in many remarks on *quo warranto* and *mandamus*, as we think that an action for *mandamus* is the proper proceeding in this case. In England it was a prerogative writ, when no other remedy could be had, and had many refinements, issuing only at the pleasure of the court. By Statute IX Anne, Ch. 20, the remedy was made one of right, and the general rules of pleading and practice were made applicable to *mandamus* as in other personal actions. At common law the return to a writ of *mandamus* could not be traversed, and if the matters set forth were sufficient in law, the defendant had judgment to go without day. If the return was false, the remedy of the person aggrieved thereby was an action on the case for making a false return; and if the plaintiff proved the matters of fact false he recovered damages and costs. By IX Anne, Ch. 20 in certain cases all or any of the material facts set forth in the return may be traversed. Our Statute, 1836, Ch. 97, Sec. 5, *The Code*, Sec. 623, extends this provision to all cases, and upon a traverse of any of the material facts "the summons, pleadings and practice shall be the same as is prescribed for civil actions," and if an

issue of fact is raised by the pleadings, it must be decided by a jury. *The Code*, Sec. 623; *Tucker* v. *Justices*, 46 N. C., 459.

This prerogative writ has never obtained in our State. *Scire facias* and *quo warranto* are abolished, and civil action substituted (*The Code*, Sec. 603), and *mandamus* is regulated as an action by *The Code*, Sec. 622. Remedies are now by action and special proceedings (*The Code*, Sec. 125), and civil actions shall be commenced by issuing a summons. *The Code*, Sec. 199.

When a plaintiff sues for an office occupied by another, *quo warranto* is the proper remedy, as in *Cloud* v. *Wilson*, 72 N. C., 155, but when the office is vacant by reason of amotion, the remedy is *mandamus* as in *Doyle* v. *City of Raleigh*, 89 N. C., 133, and this distinction reconciles the decisions.

The plaintiffs' complaint alleges that they were "duly and legally appointed commissioners" by the resident judge, and this is denied by the answer. The burden of proof was on the plaintiffs, which they failed to make, and now rely upon their *prima facie* title by reason of their appointment by the judge of the district, and the fact that they had once been in the office and afterwards excluded. The defendants offered proof of the invalidity of the plaintiffs' title, because the judge, who appointed, had no jurisdiction of the matter, i. e., it was *coram non judice*. It is true, that the acts of *de facto* officers are conclusive on third parties, but we fail to see how such *de facto* acts tend in any degree to show jurisdiction in the appointing power or the legality of the plaintiffs' title. When the clerk refused to certify, we think the remedy of any one of the petitioners or affiants was an action for a *mandamus* to show cause, &c., but the judge assumed jurisdiction, heard evidence, found facts, when there was no one to contest such

findings, and appointed the plaintiffs commissioners of the county. In order to confer jurisdiction, under Section 5 of the said Act, it was necessary:

1. That the affidavit be filed with the clerk with two hundred petitioners, one-half freeholders.

2. That the clerk shall have certified these facts to the judge in the district.

The power of the judge then was to appoint, and nothing more. His Honor finds as a fact that the plaintiffs failed to take an oath to support the Constitution of the State and United States as required by law. We then have the question, Can the court order that the plaintiffs be inducted or restored to the office of commissioner without showing a legal right to it? *Mandamus* by the Statute of ·Anne, Ch. 20, is an effectual remedy; First, for refusal of admission where a person is entitled to an office, and Secondly, for a wrongful removal where a person is *legally* possessed. 3 Bl. Com. 264. "The prosecutor (plaintiffs) must be clothed with a clear *legal and equitable* right to something which is proper by the subject of the writ, as a legal right by virtue of an Act of Parliament." Tapping on *Mandamus*, pp. 10, 12, 28, 321. "*Mandamus* is a proceeding to compel a defendant to perform a duty which is owing to the plaintiff, and can be maintained only on the ground that the relator has a *present clear, legal right* to the thing claimed, and that it is the duty of the defendant to render it to him." *Brown* v. *Turner*, 70 N. C., 93. High, in his Extraordinary Legal Remedies, after discussing in detail *quo warranto*, amotion, induction, *de facto*, restoration and *mandamus*, concludes under the latter head, Section 70: "It is to be borne in mind that the rule as above stated is applied only in favor of those who are clearly entitled *de jure* to the office from which they have been removed. And when the writ is sought to compel

the restoration of one claiming the right to the office, it is not sufficient for him to show that he is the officer *de facto*, but it is also incumbent upon him to show a *clear legal right*, and, failing in this, he is not entitled to the peremptory writ." 1 Chit. Gen. Pr., 791; *Worthy* v. *Barrett*, 63 N. C., 199. The same doctrine is asserted by the same author in the same book at Sections 9, 10, 53. The same principle is declared in *Justices* v. *Harcourt*, 4 B. Monroe, 501, and in *Clark* v. *Trenton*, 49 N. J. L. Rep., and others. In the latter it is held that "the claim of *mandamus* will not issue to seat a person in an office, even on proof of a *prima facie* title thereto, if it appears that his title is such that if seated he must be ousted from his seat upon a contest." In *State* v. *Justices of Moore*, 24 N. C., 430, Gaston, J., says: "Now, we hold it to be elementary doctrine, in support of which it is needless to refer to any of the numerous adjudged cases that acknowledge and sustain it, that a writ of *mandamus* will not be granted to a relator for his relief, except where he has a *specific legal* right and has no other specific remedy to enforce it." Affirmed in *Tucker* v. *Justices*, 46 N. C., 451.

The principle of these authorities seems reasonable. It is in harmony with that which governs in all other personal actions. It seems extraordinary that a court should feel warranted in commanding the defendants to restore a person to office from which they have removed him for what appeared to them to be a sufficient cause, when the very next day they might exercise the same right on precisely the same grounds. Why restore and drive the parties to the cost and delay of another action to determine the identical issue raised by the pleadings in this action? Suppose the office was now occupied by an intruder, or otherwise, making *quo warranto* the proper action; in that

event it is conceded that the relator would be held to strict proof of a clear legal title.   Does that circumstance change the *quantum* of proof because the action is called by a different name, when the object and facts are identically the same in each?   If so, it must be an exception to the rule in all other personal actions.

Under our system, at this day, it appears to us that the better practice is to try the issue raised by the pleadings in the present action and save the delay, trouble and expense of another action.

Reversed.

MONTGOMERY, J., dissenting: This was an application for *mandamus*, commenced by summons and complaint to compel the defendants to restore the plaintiffs to the office of Commissioners of the County of Granville, from which office they had been ejected and removed by the defendants, who were also Commissioners of the County, elected at the general election of November, 1896.   The plaintiffs had been received as commissioners by the defendants, and they had conjointly acted in the organization of the board, and in the transaction of other public business.   At the time of their expulsion by the defendants, the plaintiffs were the appointees of his Honor, A. W. Graham, a Judge of the Superior Court, who in the appointment acted by virtue of the power contained in Section 5, Chapter 135, of the Acts of 1895.   The old writ of *mandamus* was not abolished by the provisions of the The Code of Civil Procedure, as was that of *quo warranto*.   The act of 1871-72, Ch. 75, only requires that applications for *mandamus* should be commenced by summons and verified complaint. It is, however, no longer regarded as an extraordinary remedy and as one of high prerogative, but has become to be a writ of right to be issued as ordinary process in any

case to which it is applicable. *Haymore* v. *Commissioners*, 85 N. C., 268. So that whatever rights were formerly to be had under *mandamus* proceedings are still administered by the courts. It cannot be doubted that if the defendants really had misgivings concerning the legality of the appointment of the plaintiffs by Judge Graham, their remedy was by a proceeding in the nature of *quo warranto*, under Sub-Section 1 of Section 607 of *The Code*. By that manner of procedure the lawfulness of the plaintiffs' appointment would have been tested in the courts in a regular and orderly manner; and, also, during the pendency of the action the acts of the board would have been good and valid, as the appointees, even if their title to the office should have been found to be bad, would have at least been commissioners *de facto*. The conduct of the defendants in expelling the plaintiffs being wrongful, the plaintiffs must have some legal redress, for where there is a wrong there must be a remedy And it is apparent that the nature of the proceeding, which the plaintiffs should resort to to secure their rights, is either *mandamus* or an action in the nature of *quo warranto*. *Quo warranto* cannot be the proper remedy, for that proceeding is applicable where there is a contest between two claimants to an office, and the title is to be tried, or where the title is to be tried by the Attorney General for the State, or some private person against a usurper, under Sec. 607 of the *The Code*, Sub-Sec. 1; and the pleadings here show that no successors have been elected or appointed to fill the vacancies caused by the plaintiffs' expulsion. There is no other claimant to the office with whom they could test the title to the office.

It seems, then, that *mandamus* was the proper action for the plaintiffs to have instituted upon the facts set out in their complaint. Indeed, it was admitted by defend-

ant's counsel in the argument here that the plaintiffs could not have brought an action in the nature of *quo warranto*, and that the only remedy they had was in *mandamus* proceedings, and that the action, so far as the form of it is concerned, is properly brought. But the counsel insisted that, before a judgment for the restoration of the plaintiffs could be had, the plaintiffs had to show that their title to the office was a clear and full legal title, as upon an issue submitted to try that question. The plaintiffs insist that the title to the office is not to be tried, that they only seek to be restored to the position which they occupied before they were ejected by the wrongful act of the defendants, and that all they are required to show is a *prima facie* right to the office, which appears from the appointment of Judge Graham. This is the point in the case. The defendants, of course, aver in their answer that the appointment of Judge Graham is invalid on account of certain alleged irregularities.

In support of the defendants' position, we have been referred to the decisions of this court in *Worthy* v. *Barrett*, 63 N. C., 199; *Doyle* v. *City of Raleigh*, 89 N. C., 133; and *Ellison* v. *City of Raleigh*, Ibid., 125.

The controlling fact in *Worthy* v. *Barrett*, was not like any fact in the case before us. There, the petitioner was a sheriff elect, whose bond was refused, and who was denied induction into his office by the defendants, who were commissioners of the county, on the ground that he was personally disqualified by constitutional inhibition from holding any office in North Carolina. The court held that the matter being perfectly clear that the plaintiff could not hold the office, they would not do the vain thing of compelling the commissioners to put a man into an office who ought not to serve. The ground of this ruling was that it appeared clearly from the admissions in the

pleadings that the plaintiff was personally disqualified to hold the office; that he ought not to be allowed to fill it because of disabilities imposed upon him by law. But it does not follow that the court would have so summarily disposed of that branch of the case if it had appeared that the plaintiff was not personally disqualified, and had been awarded the proper certificate of election. It is improbable that, if such had been the fact, the court would have ordered a trial upon the issue whether or not the plaintiff had been duly elected. His certificate of election, doubtless, would have been regarded as a *prima facie* right and title to the office, and the defendants ordered to induct him. Without further comment on that case, we simply say that the facts there were very different from the facts here. In this case the plaintiffs have been installed into their offices, have acted conjointly with the defendants, and, by the admission of the defendants, in their answer, the plaintiffs were personally qualified to fill the offices to which they were appointed.

The facts in *Doyle's Case, supra,* were, that he was elected an alderman of the city of Raleigh, was inducted into the office, acted with the other aldermen and was ejected from the board on the ground that he was, under the Constitution, incompetent to hold the office. No successor was appointed by the board to fill the vacancy caused by his expulsion. The court held that he sought his appropriate remedy to be restored to his office in *mandamus* proceedings. In the case before us, the plaintiffs had been appointed under the authority of law, had been inducted, had acted with the defendants as a board of commissioners, and were expelled from the councils of the board, and no successors have been appointed. If *mandamus* was a proper proceeding in Doyle's case, certainly it is the proper remedy for the plaintiffs in this action The court did not

decide in Doyle's case that the plaintiff had to prove a clear and full legal title to the office of alderman before he could be restored; it did not decide that the title to the office had to be tried before restoration could be ordered. The court did not even discuss that question It simply held that *mandamus* was the proper remedy because the plaintiff had been elected, had been inducted into his office, had been rejected, and that the vacancy still existed at the time of the trial; that the place which the plaintiff held was not an office, and that he ought to be restored, "even if the aldermen had jurisdiction in the premises and had proceeded in a regular way to pass upon the question of competency."

In *Ellison's Case, supra,* the plaintiff was a member of the board of aldermen of the city of Raleigh, duly elected, and had attended three meetings with his associates. He was ejected, and his successor was appointed and qualified. *Mandamus* was resorted to by the plaintiff, and this court held merely that the action of the board of aldermen was wrongful, but that the plaintiff could not be restored in *mandamus* proceedings for the reason that his successor had been appointed under color of competent authority, and was a *de facto* officer, and that the title to the office was therefore in controversy between him and his successor. The matter was narrowed down to a contest between the plaintiff and his successor for the office of alderman, and the title had to be tried by *quo warranto.* Nothing else was decided in that case.

These decisions of our court are in harmony with some of the best text writers on *mandamus* and *quo warranto.* In High on Extraordinary Remedies, it is said that "in cases where relief has been sought to determine disputed questions of title to and possession of public offices, the courts have almost uniformly refused to lend their aid by *man-*

120—32

*damus,* since the remedy by information in the nature of a *quo warranto* is justly regarded as the most appropriate and efficacious remedy for testing the title to the office." And the same author, in th e same work, at Section 67, writes: "And *mandamus* is recognized as a peculiarly appropriate remedy to correct an improper amotion from a public office and to restore to the full enjoyment of his franchise a person who has been improperly deprived thereof." In Dillon's work on Municipal Corporations, Vol. 2, at Section 892, it is stated in substance that generally in this country, by adoption from the English law, where one is in the actual possession of an office under a claim by election or commission, and is performing the duties of the office, *mandamus* is not the proper proceeding in which to try the validity of such election or commission to admit another, but that *quo warranto* is the remedy. In the same section the author writes: "The certificate of election of an officer, or his commission coming from the proper source, is *prima facie* evidence in favor of the holder, and in every proceeding except a direct one to try the title of such holder it is conclusive; but in *quo warranto* the court will go behind the certificate or commission, and inquire into the validity of the election or appointment and decide the legal rights of the parties upon full investigation of the facts."

Decisions can be found on both sides of the question, in the courts of the different States, as to whether the plaintiff in *mandamus* should be compelled to show more than a *prima facie* case. But I am of the opinion that in cases where *mandamus* is the proper remedy, as it is in the case before us, the title to the office cannot be tried, and that when the claimant shows an appointment or certificate of election from the proper source the same is *prima facie* evidence in favor of the holder, and entitles him to be re-

stored to the office from which he was unlawfully removed. The counsel of the defendants, in their very excellent brief, asked this question: ''Is it possible that, when one, asking to be put in an office, shows his appointment and it is apparent on the face of it that it is irregular, illegal and void, and founded on a proceeding which is patently illegal and without any warrant of law, the court must refuse all inquiry into the right and put such party into office, although it is apparent that they must put him out the next day?'' The answer to the question is that it does not state the point for decision. The question is, Have the plaintiffs shown a *prima facie* right to the office which they claim, and were they unlawfully ejected therefrom by the defendants? These questions we have answered in the affirmative. The law will not permit a majority of the commissioners of a county to arbitrarily pass upon the rights of one or more of their members to the office which they claim, and remove them without a hearing and without trial. Indeed, they had no jurisdiction over the matter upon which they acted.

The object of the defendants undoubtedly was to take a short cut to thwart the action of the Judge by ejecting summarily the plaintiffs who were his appointees, without waiting for the due process of the law. If such proceedings were tolerated, the law would soon be superseded by violence. Under the appointment of Judge Graham, the plaintiffs were *de facto* officers, if not officers *de jure*. (But upon this question we are not passing any judgment, nor do we intend to do so in this proceeding.) The defendants or any citizen of Granville county had the clear, legal right, under Sub-Section 1 of Section 607 of *The Code*, to institute a proceeding in the nature of *quo warranto* against the plaintiffs to have them removed from the office they were filling at the time of their expulsion, if it was

thought that their appointment was invalid or unlawful. But, instead of following that course, the defendants resorted to a wrongful and unlawful method, and wrongfully and unlawfully removed the plaintiffs. I think the plaintiffs should be restored to their offices, and then they can take such oaths as they failed through inadvertence to take when they entered upon the discharge of their duties. I think there was no error in the ruling of his Honor in refusing to dismiss the action on the motion of the defendants.

CLARK, J., concurring in the dissenting opinion: The basis of the authority of the Judge to appoint the two additional commissioners is the substantive and substantial fact that two hundred electors, one hundred of whom are freeholders, have petitioned him to make such appointment, and not the merely formal requirement that the clerk has certified that such petitioners are electors and freeholders. When the petition is handed the Judge with the requisite number of names, and the fact that there are 200 electors and 100 of them are freeholders, is shown, as in this case, by better evidence than the certificate of the clerk, to-wit, by the primary evidence on which the clerk should have acted, it would be sacrificing substance to form to permit a contumacious clerk, who might be ignorant of his duty or perhaps moved by improper motives, to nullify an Act of the General Assembly by his veto. The Judge, having found the substantive fact that 200 electors, 100 of whom are freeholders, have signed the petition, it is a matter of no sort of consequence that the clerk has refused to make the certificate, the object of which is merely to save the Judge the labor of finding how the fact is. No part of the duty of appointment is vested in the clerk. When the Judge found that the state of facts existed which required him to

appoint, it was his duty to do so. In *Waller* v. *Sikes*, at this term, the court has held that the Judge should not have ordered the clerk to make the certificate and have put him in contempt for failure to comply. I think his certificate being only one means of enlightening the Judge, when the latter found the facts independently of the clerk's contumacious refusal to make the certificate, the Judge should simply have proceeded without it. The certificate was no longer essential.