### GILLILAND v. BOARD OF EDUCATION.

(Filed May 22, 1906).

*Evidence—Race Ancestry—General Reputation—Opinion Evidence—Instructions.*

1. In an action by plaintiffs for a mandamus to admit them to the white schools, where it was alleged that one of their ancestors, who lived in Buncombe County 40 years ago, was of negro blood, it was competent for plaintiffs' witness who lived at that time as a neighbor to their ancestor four years, to testify in answer to a question if he remembered whether their ancestor voted, and if so, when and where, that "there was nothing said against his voting and I think he always voted," as tending to show that their ancestor was of pure white blood, colored people not being allowed to vote at that time.

2. Where a witness has had opportunity to note relevant facts himself and did observe and note them, and simply qualifies his testimony by the use of the term "I think" because his impression or memory is more or less indistinct, this, while in the form of opinion, is really the statement of a fact and will be so received.

3. In questions of race ancestry, general or common reputation is received under certain conditions, and it is not alone by oral expression that this reputation is evidenced and established. The manner in which a man is received and treated by his neighbors and the community generally may give as convincing evidence of their opinion and attitude concerning him as if it was declared in speech.

4. The charge to a jury must be considered as a whole in the same connected way in which it was given, and upon the presumption that the jury did not overlook any portion of it. If, when so considered, it presents the law fairly and clearly to the jury, it will afford no ground for reversing the judgment, though some of the expressions when standing alone, might be regarded as erroneous.

ACTION by Sylvia Gilliland and others, by their next friend, against Board of Education of Buncombe County and

School Committee of Avery's Creek Township, heard by *Judge. T. A. McNeill* and a jury, at the November Term, 1905, of the Superior Court of BUNCOMBE.

The plaintiffs, children within the school age, resident in Avery's Creek Township, Buncombe County, on August 1, 1905, entered, as pupils, the school established in said township, in pursuance of law, for children of the white race. They attended the school for one week, when they were excluded therefrom by the defendants, who have since continued to refuse them admittance to the school, after demand duly made by the plaintiffs. The defendants admit that the plaintiffs are within the school age and resident within said township and assignable to the schools established therein, and admit further that they have excluded them from the schools of said township established for the white race, and claim the right so to exclude them on the ground that the plaintiffs are not children of the white race, but are of mixed blood, having a certain amount of negro blood. The cause was made to depend and did depend on that single question whether the plaintiffs were children of the white race pure and unmixed with any negro blood. The form of the issue is as follows: "Are the plaintiffs entitled to admission in the white schools of Buncombe County?" Under the charge of the court the jury rendered a verdict in favor of the plaintiffs; judgment on the verdict and the defendants excepted and appealed.

*J. B. Anderson* and *Locke Craig* for the plaintiffs.

*Tucker & Murphy* and *J. Frazier Glenn* for the defendants.

HOKE, J., after stating the case: While the principle involved in this issue is one of supreme importance, not only to the parties litigant, but to the entire commonwealth, the questions as presented to us in the case on appeal are very

much restricted in their scope and import, and are without serious difficulty.

The Constitution and statutes of North Carolina require that the children of the white race and the children of the colored race must be taught in separate public schools. In obedience to this requirement, the defendants have established separate public schools for the two races in Avery's Creek Township. It is conceded that the plaintiffs are children within the school age, resident in that township, assignable to the public schools therein, and that if they are children of the white race, a substantial right has been unlawfully denied them by defendants, properly enforcible by mandamus.

The issue is, in form, determinative of the controversy and such as enabled the parties to present every phase of the evidence relevant to the question involved. After a very full investigation the jury have answered the issue in plaintiffs' favor and if this answer has been given after a trial free from error, the verdict must and should be an end of the matter.

The claim and allegations of defendants placed the mixture of negro blood in Jeffrey Graham (now dead), a great grandfather of plaintiffs, who lived in Buncombe County about forty or forty-four years ago. In the deposition of William Whitesides, offered by plaintiffs as evidence to show that their ancestor, Jeffrey Graham, was of pure white blood, the witness stated that he lived as a neighbor to Jeffrey Graham four years about forty or forty-four years ago, and the following question and answer were assigned for error: Q. "Do you remember whether Jeffrey Graham voted, and if so, state when and where?" A. "There was nothing said against his voting, and I think he always voted." It is well established that in questions of race ancestry, general or common reputation is received under certain conditions, and the principle applies here. Wigmore on Evidence, sec. 1605, p.

GILLILAND *v.* BOARD OF EDUCATION.

1954; *Bryan v. Walton,* 20 Ga., 480; *Vaughan v. Phebe,* 7 Tenn., 384; *Nave v. Williams,* 22 Ind., 368. And it is not alone by oral expression that this reputation is evidenced and established. The manner in which a man is received and treated by his neighbors and the community generally, may give as convincing evidence of their opinion and attitude concerning him as if it was declared in speech. At the time spoken of by the witness, colored people were not allowed to vote under the Constitution and laws of this State, and the fact that the ancestor was permitted to vote openly and without any objection is most pertinent in establishing the general reputation and opinion that said ancestor was qualified under the laws to do so.

Defendants do not insist on this position, but rest the objection on the fact that this is simply an opinion of the witness. We do not think, however, that this is a correct interpretation of the question and answer.

A witness who undertakes to testify to objective facts and qualifies his testimony by using the terms, "I think," or "I have an impression," etc., if the witness has had no physical observation or has made no note of the facts, but is merely stating to the court and jury his mental inference or deduction, this, as a rule, is incompetent. But if the witness has had opportunity to note relevant facts himself and did observe and note them, and simply qualifies his testimony in this way because his impression or memory is more or less indistinct, this, while in the form of opinion, is really the statement of a fact, and will be so received. Greenleaf Ev. (16 Ed.), sec. 430 (i). And so it is here. The witness was a neighbor of Jeffrey Graham for four years or more and speaks from his own observation. He is giving to the jury the impressions of things he saw and noted, and not an inference or deduction from things he had not seen, and the evidence was properly received.

Again, it is urged for the defendants that there was error

in the judge's charge; duly pointed out by exception, as follows: "If you find that the plaintiffs and their ancestors have not heretofore associated with negroes, but have associated with white people on terms of social equality, and that their ancestors went to white schools, claiming to be of Portuguese descent, this evidence must be considered in arriving at a conclusion as to what race they belonged, and you should consider in this connection the declaration of Jeffrey Graham that he was of Portuguese descent." The error insisted upon here being that the judge in effect declared as a fact that Jeffrey Graham had made said declarations, and this, the defendants contend, is in violation of the statute which prohibits a judge from expressing an opinion as to whether a relevant fact is or is not sufficiently proved. Revisal, section 535. But we do not think that the charge is open to this criticism. We have held in *State v. Exum,* 138 N. C., 599, that the charge to the jury must be considered as a whole in the same connected way in which it was given, and upon the presumption that the jury did not overlook any portion of it. If, when so considered, it presents the law fairly and clearly to the jury, it will afford no ground for reversing the judgment, though some of the expressions, when standing alone, might be regarded as erroneous, citing Thompson on Trials, section 2407. There was testimony in behalf of both plaintiffs and defendants as to declarations of Jeffrey Graham and others in regard to the status, race, etc., of the plaintiffs' ancestors, and His Honor, in a previous portion of his charge in referring to this testimony, had said: "You will also take into consideration and estimate the evidence tending to show declarations of persons on both sides as to the status, color and association of the plaintiffs' ancestors." Taking the charge as a whole, we think that this correct instruction should, by fair interpretation, be annexed to and qualify the second reference to these declarations, and the jury could only have understood that the existence or non-existence of

such declarations was left for them to determine.  We find no error in the trial and the judgment is affirmed.

While the defendants have no doubt acted throughout from a conscientious purpose to do their full duty in the premises, and while the exigencies of the case may have made it desirable and perhaps necessary to bring the matter before a jury for decision, we deem it not improper to say that we have examined the record in which the entire testimony is set out, and are of opinion that the jury have rendered a righteous verdict and that the truth of the matter has been established.

No Error.