J. O. PROCTOR AND BROTHER v. CAROLINA FERTILIZER AND PHOSPHATE WORKS ET AL.

(Filed 15 March, 1922.)

**1. Injunction—Issuable Matters—Fraud—Deceit.**

Where a permanent injunction is the main relief sought in the action, and the pleadings and affidavits disclose serious controverted questions of fact, tending to show deceit and fraud by which the plaintiff would be deprived of his right, were the restraining order dissolved, it should be ordered continued to the hearing so that the facts may be properly ascertained by the jury and the law applied.

**2. Same—Irreparable Loss.**

Where the plaintiff, applying for injunctive relief as the main remedy sought in his action, has shown probable cause, or it is made to appear that he will be able to make out his case at the final hearing, or where the dissolution of the temporary restraining order would probably work him irreparable injury, it should be continued to the final hearing.

**3. Same—Corporations—Bills and Notes—Banks and Banking—Certificates of Deposit.**

Where there is conflicting evidence, upon the hearing of an injunction, that a corporation has, by the fraudulent misrepresentations of its stock soliciting agent, obtained the note of the plaintiff, and the corporation has discounted it at a bank under agreement to let the money stay in the bank under a certificate of deposit; and in order to defeat the rights of the plaintiff the officers, without authority, have collusively transferred the certificate to a relative of the president, for the president's personal benefit, the defendant's claim as a *bona fide* holder for value raises a material issue of fact that the jury should determine upon the final hearing.

**4. Same—Fraudulent Holder of Certificate of Deposit.**

Where there is evidence, upon the hearing for a permanent injunction, that the stock soliciting agent of a corporation had procured the plaintiff's note for the corporation by fraud, and it had discounted the note at a bank and held a certificate of deposit therefor; and in fraudulent collusion with the defendant had transferred to him the certificate of deposit for the personal benefit of the president of the corporation: *Held*, the fraudulent transaction as to the note being traceable to the certificate of deposit, the defendant may be restrained from collecting it from the bank.

APPEAL by Jesse Fussell from PITT, heard by *Lyon, J.*, at Beaufort, 17 August, 1921, from a continuance of restraining order to the hearing.

This action was begun originally against the Carolina Fertilizer and Phosphate Company and the Bank of Grimesland to restrain the payment by the Bank of Grimesland of certain money deposited therein, and for which a time certificate had been issued. Later, the Bank of Rose Hill and Jesse Fussell were made parties defendant in the restraining order issued in said proceedings which were heard before Lyon, J., 17 August, 1921, at Beaufort, who continued the restraining order to the hearing.

There is evidence tending to show that prior to 4 September, 1920, the defendant fertilizer company was incorporated in this State to manufacture and sell fertilizers and proceeded to employ a force of agents to sell its stock throughout the eastern part of the State. On 4 September, 1920, an agent of the company approached the plaintiffs representing that the company was a going concern; that it had two fertilizer plants in operation, one at Greenville, N. C., and another at Fairmont, N. C., and was building another at Rocky Mount, N. C.; that it was ready and prepared to deliver fertilizer from the Greenville plant and supply the plaintiffs with all the fertilizer they might need for their own use and for sale during 1921, and that it would deliver to the plaintiffs at least 500 tons of fertilizer of standard make for the 1921 crop, and that it would sell said fertilizer $3 to $4 cheaper per ton than plaintiffs could buy it elsewhere, provided they were stockholders;

that said company would guarantee the plaintiffs that they would pay the amount of $10,000 as dividends and reduce the amount in price of fertilizer within the space of 12 months; that said company was perfectly solvent, owned large assets, and was amply able to carry out and comply with all contracts and agreements.

It was further alleged in the complaint treated as an affidavit, that relying upon these assurances and guarantees the plaintiffs were induced to subscribe for $10,000 of stock, and executed and delivered their note in that sum, dated 4 September, 1920, due and payable 1 October, 1921; that soon thereafter said company attempted to sell and deliver to the Bank of Grimesland plaintiffs' note for $10,000 for $9,800, and as an inducement to said bank to purchase said note agreed that the $9,800 should remain in the bank for 12 months if the bank would issue them a certificate for such amount, payable to said company, which was done; that soon thereafter the plaintiffs were informed and believed that all the statements and guarantees by the agents of the company were false and untrue, and were made for the purpose of defrauding these plaintiffs, and the said notes were secured through falsehood, fraud, misrepresentation, and deceit of said agents, which was known to the company; that said company was not solvent, nor able to meet its obligations; had no factories or plants in operation, not even a title to real estate in Greenville; was not able to furnish any fertilizer, but as a matter of fact was heavily involved, had acquired no property, and was proceeding, in violation of the laws of North Carolina, in selling said stock; that later said company attempted to convey said certificate of stock to its codefendant, Jesse Fussell, a cousin of D. C. Fussell, president of the company, when in truth and fact the said Jesse Fussell was not a purchaser for value without notice, but was only used by the said company and D. C. Fussell, president, to carry out their scheme in defrauding, or attempting to defraud, the plaintiffs.

On 11 July, 1921, the affairs of said company were placed in the hands of receivers as being insolvent, and said receivers are now trying to settle the affairs of the company; when the records and minutes were delivered to said receivers they contained no authority for transferring or assigning any time certificate or notes, and plaintiffs allege that the obtaining of the note, the time certificate, and the attempted transfer of the time certificate were acts all done in an attempt to collect said time certificate, which was procured through fraud, misrepresentation, and deceit of the company's agent, which was well known to the defendant Jesse Fussell, and this action was brought to restrain the collection and have the note canceled as well as the time certificate.

Upon the hearing, the court finding that "all the parties to the transaction involved are before the court, and further finding that the material facts necessary to a proper determination of the action are in dispute, and should be submitted to a jury continued the restraining order in full force and effect until the final determination of this cause, and it further appearing to the court that codefendant Jesse Fussell claimed to be the owner of the certificate of deposit, set out in the complaint, which certificate is held by the Bank of Rose Hill, the said Jesse Fussell, his agent and attorneys, are hereby enjoined and restrained from attempting to take possession or collect said certificate until the final determination of this Court." The court required the plaintiffs to file in the cause a bond in the sum of $5,000, payable to the defendant Jesse Fussell, upon the payment of all damages which he may recover against the plaintiff. It also appeared in the record that the defendant Carolina Fertilizer and Phosphate Company, at its meeting 12 June, 1920, fixed the salary of its president at $6,000 per annum plus 50 cents per ton for all fertilizers produced and manufactured over 5,000 tons for the first year, the salary to begin on 15 April, 1920, and thereafter authorized a mine foreman at a salary of $200 per month, also to be back-dated to 15 April, 1920; and authorized the employment of sundry other officers, and with authority given to the secretary and treasurer to employ accountants and office assistants and fix their salaries. The president and treasurer, or either of them, were also authorized to issue the notes of the company in such sums and amounts as they might determine, payable to any bank, person, firm, or corporation, and that the president and secretary and treasurer, or either of them, was authorized to endorse and transfer any bills receivable, check, or certificate of deposit belonging to the company, and to discount or transfer the same or use it as collateral security. From the order continuing the restraining order to the hearing the defendant Jesse Fussell appealed.

*F. G. James & Son for plaintiffs.*
*Stevens, Beasley & Stevens for Jesse Fussell.*

CLARK, C. J. From an inspection of the pleadings, affidavits, and orders it appears that there were serious controverted questions for the jury to decide at the final hearing upon the allegations and evidence tending to show deceit and fraud. In such case the usual rule is that when, as here, the injunction is the main relief demanded, it will be continued to the hearing in order that the truth of the matters in controversy can be ascertained, and justice more certainly and fully administered, especially where serious questions are raised and it is neces-

sary for the plaintiff's protection that matters be held in abeyance until the facts can be properly ascertained and the law duly applied. In *Tise v. Whitaker,* 144 N. C., 508, *Hoke, J.,* says: "It is a rule in an action of this character, where the main purpose is to obtain a permanent injunction, if the evidence raises a serious question as to the existence of facts which make for the plaintiff's right, and sufficient to establish it, the preliminary restraining order is continued to the hearing." When the plaintiff has shown probable cause, or it may be seen that he will be able to make out his case at the final hearing, the injunction will be continued. *Seip v. Wright,* 173 N. C., 14; *Yount v. Setzer,* 155 N. C., 213; *Hyatt v. DeHart,* 140 N. C., 270. This Court has repeatedly held that where the dissolution of the injunction would probably work irreparable injury to the plaintiff, it should be continued to the hearing. The bond required of the plaintiff, and which has been duly filed, will be ample protection to the appellant against any apprehended damage.

The defendant Jesse Fussell further assigns as error that the injunction should have been dissolved because the evidence discloses that Jesse Fussell is the *bona fide* holder in due course of the certificate of deposit in the Bank of Greenville, and there is no evidence to the contrary. Section 15, however, of the complaint, treated as an affidavit, alleges that no authority was vested in D. C. Fussell, or any officer of the company, to transfer the certificate, that it was obtained by fraud and deceit, which was known to the said Jesse Fussell, and that he is not a purchaser for value in due course and without notice; that he is a cousin of the president of the company, and was merely attempting to collect said certificate for the use and benefit of D. C. Fussell, and that he was not the *bona fide* holder thereof. Upon such affidavit and allegations the matter should be held until the facts can be determined.

The defendant Fussell also assigns as error that it is not shown how the certificate of deposit was secured, but it is further alleged in the complaint treated as an affidavit, that it was procured through fraud, misrepresentation and deceit; and further, that the money for said note remaining in the Bank of Grimesland should not be paid out, upon the strength of a note whose assignment was procured by the defendant through fraud, as alleged.

In *Mfg. Co. v. Summers,* 143 N. C., 102, *Hoke, J.,* says: "When a man's property has been obtained from him by actionable fraud or covin, the owner can fully recover it from the wrongdoer as long as he can identify or trace it; and the right attaches not only to the wrongdoer himself, but to any one to whom the property has been transferred otherwise than in good faith and for valuable consideration; and this applies

not only to specific property, but to money and choses in action." In that case the verdict of the jury having established the right of the plaintiff to a fund in bank as against one of the defendants who was insolvent and had attempted to misappropriate it, the payment of a cashier's check covering said fund which he had endorsed to the other defendant, was restrained until the rights of parties were fully determined.

In *Parker v. Grammer*, 62 N. C., 28, it was held: "Where there is reason to apprehend that the subject of the controversy will be destroyed or removed or otherwise disposed of by the defendant, pending this suit, so that the complainant may lose the fruit of his recovery or be hindered or delayed in obtaining it, the Court will secure the fund by sequestration and injunction until the main equities are adjudicated in the hearing." All the parties being in court, it was eminently proper that all the matters in controversy should be determined in the same action, and that the litigation being in one forum, a multiplicity of suits may be avoided.

Affirmed.