Application for mandatory injunction. There was evidence tending to show the facts to be as follows: Plaintiff is the owner of 1 3/4 acres of land in the unincorporated town of Spray, on which its mill is situated. Its premises, except where the driveway connects with the public road, are surrounded by the lands of the water power and land company and allied corporations. Plaintiff was incorporated and began manufacturing woolen products upon its premises about 1881, and in 1893 acquired certain water rights and a title to its property by deed executed by the water power and land company. A driveway connecting the mill with the public road was used by the plaintiff from *Page 550 
1884 (date of deed), and then continuously until it was obstructed by defendants (December, 1921). The board of county commissioners ordered the Morgan Foard road in Spray to be rebuilt, regarded, and paved with asphalt, and the water power and land company and the Leaksville Woolen Mills agreed to pay one-half the costs. At several meetings of the board of commissioners during October and November, 1921, the defendant McIver, acting as agent of his codefendant, insisted that the road be widened from five to ten feet at the place where it was intersected by the driveway from plaintiff's property. The plaintiff objected on the ground that its driveway would thereby be obstructed, and that it had no other available outlet; and on 9 November, 1921, the commissioners made an order that the road between (513) the Leaksville Cotton Mills and the Leaksville Woolen Mills be narrowed so as not to interfere with the driveway of the plaintiff. On 5 December the commissioners met again and made another order to the effect that the road be widened five feet on the side across from the opposite plaintiff's premises. The defendant McIver then said, in the presence of the board, that if they did not build the road as contended by defendants, he (meaning both defendants) would do so. Early in the morning of 6 December, the defendants, with a force of men and equipment, constructed an embankment upon the driveway about twenty feet in length and seven in height and ten to twelve in width. This embankment obstructed the plaintiff's right of ingress and egress with vehicles. The plaintiff contended that it was entitled to the driveway as an easement, as a right appurtenant to its premises, and incidentally as a way of necessity.
The defendants contended that another driveway or outlet could be provided on the plaintiff's property which would be not less convenient than the other; that the driveway was really on the land of the defendant company, and the plaintiff's use of it was permissive; that the portion of the road complained of was laid out in accordance with the contract made by the water power and land company and the Leaksville Cotton Mills with the board of commissioners; that if the alleged obstruction be removed the road will be left in a dangerous condition; and that plaintiff can be compensated in money. Numerous affidavits in proof of these claims were read by the parties at the hearing.
Judge Harding rendered judgment for plaintiff; defendants appealed.
By application for a mandatory injunction the plaintiff seeks relief from the defendants' alleged invasion of its proprietary rights. In the decree his Honor did not incorporate a formal finding of the facts, possibly because as to questions of fact this court, in matters purely equitable, may examine the evidence and form its own conclusion. We must, therefore, consider the affidavits and the record evidence presented by the parties and determine therefrom whether the plaintiff is equitably entitled to the desired relief.
With reference to their nature injunctions are classified as preventive and mandatory — the former commanding a party to refrain from doing an act, and the latter commanding the performance of some positive act. While in the greater number of instances injunction is a preventive remedy, there is no doubt that the court has jurisdiction to issue a preliminary mandatory injunction where the case is urgent and the right is clear; and, if necessary to meet the (514) exigencies of a particular situation, the injunctive decree may be both preventive and mandatory. Beach on Inj., sec. 97; High on Inj., sec 1 et seq.; 22 Cyc. 741 et seq. Under the former practice the mandatory injunction was distinguished by two characteristics; its infrequent use and its indirect terms. The American courts were not inclined to grant such preliminary order, and when they yielded exnecessitate they usually accomplished their purpose by a writ which was apparently prohibitory. Bispham's Prin. of Equity, sec. 400 et seq. But these characteristics no longer predominate. At to the circumstances under which the writ should be issued, Sir George Jessel, Master of the Rolls in 1875, expressed the opinion that the same caution, neither more nor less, ought to be exercised by courts in granting mandatory injunctions as in granting preventive. Beach, supra, sec. 101; Smith v.Smith, L.R. 20 Eq. 500. Bispham's statement is almost identical: "Indeed, there would seem to be no good reason why, in a proper case, a mandatory injunction should not issue upon preliminary hearing. Gross violations of rights may occur in the shortest possible time, and a few hours wrongdoing may result in the creation of an intolerable nuisance, or in the production of an injury which, if prolonged, might soon become irreparable. In such cases the interposition of the strong arm of the chancellor ought to be most swift; and if the immediate relief afforded could not, in a proper case, be restorative as well as prohibitory, no adequate redress would, in many instances, be given." Prin. of Eq., p. 638. And as to the indirect terms of the writ, Walker, J., pertinently remarks: "Why not call this process by its right name instead of granting what is really mandatory under the guise of preventive relief? When this is done, we are trying to deceive ourselves, for no good or practical reason, when we know what we are actually *Page 552 
doing or what the inevitable effect will be. It is simply adherence to an old form and custom of the court of equity, which did not even gain the approval of some of its ablest chancellors. In modern times, since we try to call things by their true and appropriate titles, so we may be better understood, the decided trend of the courts, especially in this country, is towards a more sensible policy, as we have already shown by authority."Keys v. Alligood, 178 N.C. 20.
When it appears with reasonable certainty that the complainant is entitled to relief, the court will ordinarily issue the preliminary mandatory injunction for the protection of easements and proprietary rights. In such case it is not necessary to await the final hearing. If the asserted right is clear and its violation palpable, and the complainant has not slept on his rights, the writ will generally be issued without exclusive regard to the final determination of the merits, and the defendant compelled to undo what he has done. Beach, supra, sec. (515) 1019. There are numerous decisions in which various applications of this principle have been made. For example, in Broomev. Tel. Co., 42 N.J. Eq. 141, the defendant, without legal right, went upon the complainant's land and against his protest set up telephone poles. The complainant applied for a mandatory injunction, and the defendant claimed that it should not be required to remove the poles, but at most should only be prohibited from affixing the cross-arms and stringing the wires. But the chancellor said: "Where there is a deliberate, unlawful, and inexcusable invasion by one man of another's land, for the purpose of continuing trespass for the trespasser's gain or profit, and there has been neither acquiescence nor delay in applying to the court for relief, the mere fact that the trespass was complete when the bill was filed will not prevent an injunction in the nature of a mandatory injunction against the continuance of the trespass." Page 143. In Hodge v. Giese, 43 N.J. Eq. 342, the complainant and the defendant rented parts of the same building as tenants of one landlord — the defendant occupying the basement and the complainant the first and second floors. In a cellar at the rear of the basement was a heater connected with pipes that heated the two floors above. The only access to the heater was a passway through the basement. The defendant prohibited the complainant's access to the heater. A bill was filed for an injunction to restrain the defendant from excluding the complainant — which in effect was a bill for a mandatory injunction to preserve the complainant's alleged right. Van Fleet, V. C., observing that no remedy would be adequate which did not prevent a repetition of the injury, said: "On the admitted facts of the case, and according to well established legal principles, the legal right on which the complainant rests his claim to an injunction is in my judgment free from the least *Page 553 
doubt. This being so, the duty of the court is plain. It is bound to give to the complainant the protection he asks, if the injury against which he seeks protection belongs to the class which this Court may rightfully restrain by injunction. A court of equity may protect and enforce legal rights in real estate, where the right, though formally denied, is yet clear on facts which are not denied, and according to legal rules which are well settled, and the injury against which protection is asked is of an irreparable nature." Page 350.
The principle under discussion has likewise been applied to preserve the right to use a passageway and open court (Salisbury v. Andrews, 128, Mass. 336), to remove a structure projecting over the complainant's land (Norwalk Co. v. Vernam, 75 Conn. 663), to prevent a continuing trespass (Hodgkins v. Farrington, 150 Mass. 19), to remove a fence obstructing access to the complainant's property (Avery v. R. R.,106 N.Y. 142), to redress a continuing trespass (Wheelock v. Noonan,108 N.Y. 179), and to restore the bank of a ditch to the place from which it had been removed (Keys v. Alligood, supra). (516) Other illustrations of the principle may be found in an elaborate note to the case of Moundsville v. R. R., 20 L.R.A. 161. The case ofDaniel v. Ferguson, 2 Ch. D. 27, is directly in point. The plaintiff was the lessee for a long term of three adjoining houses. The defendant prepared to build upon an adjoining lot, and the plaintiff, after inspection of the plans, concluded that erection of the proposed buildings would materially affect the access to his houses of both light and air. After the defendant was notified that a motion for an injunction would be made, he put to work a large number of men who continued building until the wall reached the height of thirty-nine feet from the ground. An injunction ad interim was issued and the work ceased. When the original motion was heard the defendant was restrained until judgment or further order from building so as to darken the plaintiff's light and from permitting the wall or building to remain. Referring to the conduct of the defendant, the Court employed this language: "Whether he (defendant) turns out at the trial to be right or wrong, a building which he has erected under such circumstances ought to be at once pulled down, on the ground that the erection of it was an attempt to anticipate the order of the court. To vary the order under appeal would hold out an encouragement to other people to hurry on their buildings in the hope that when they were once paid up the court might decline to order them to be pulled down. I think that this wall ought to be pulled down now without regard to what the result of the trial may be." Page 30. In affidavits offered by the plaintiff it is alleged that on the day following the final order of the board of commissioners the defendants at an early hour entered upon the plaintiff's property with a *Page 554 
large force of men and the necessary equipment and constructed an embankment which completely obstructs the driveway and prevents the use of vehicles in going upon and returning from the plaintiff's property. As to the time and the circumstances under which this work was done, there appears to be no controversy. Whatever their intent may have been, the defendants, with knowledge of the orders made by the board of commissioners, and no doubt in anticipation of the plaintiff's prompt application for preventive relief, by sheer physical force accomplished the object which they had not attained by the orderly process of law. Under these circumstances only one conclusion can be reached. The plaintiff, without regard to the ultimate result of the action, is entitled to a decree compelling the defendants to undo what they have done. Beach, supra, sec. 102. The contention that the plaintiff may be compensated in money cannot deprive the court of its equitable jurisdiction. Not only are the damages difficult of assessment, but even if assessed, the plaintiff, if its prima facie case be accepted, would ultimately be deprived of the enjoyment of its (517) property. Smith v. Smith, supra; Porter v. Mfg. Co., 65 W. Va. 636. It is the office of a court of equity, in the administration of equitable relief, in all proper cases to prevent such a result. We regard it unnecessary at this time to decide whether the driveway is appurtenant to the plaintiff's deed, or an easement acquired by adverse user. These and other legal questions discussed in the briefs may be determined on the final hearing. We are concerned now, not with the ultimate disposition of the case, but only with the question whether for the present purpose the plaintiff has clearly shown a prima facie right to the relief demanded. 9 R. C. L. 821; 14 ibid, 315 et seq.; Gray v.Warehouse Co., 181 N.C. 166. We think it has.
The judgment of his Honor is affirmed. Let this be certified to the Superior Court of Rockingham County.
Affirmed.
Cited: Cotton Mills v. Comrs., 184 N.C. 229, 230; Kinsland v. Kinsland,188 N.C. 811; Advertising Co. v. Asheville, 189 N.C. 739; Vester v.Nashville, 190 N.C. 268; Bank v. Bank, 194 N.C. 722; Lineberger v. CottonMills, 196 N.C. 507; Davis v. Alexander, 202 N.C. 136; Elder v. Barnes,219 N.C. 416; Clinard v. Lambeth, 234 N.C. 418; Hospital v. JointCommittee, 234 N.C. 683; R. R. v. R. R., 237 N.C. 95; Roberts v. Cameron,245 N.C. 376. *Page 555