HAMLET HOSPITAL AND TRAINING SCHOOL FOR NURSES, INCORPO-
RATED, v. THE JOINT COMMITTEE ON STANDARDIZATION CREATED
BY ARTICLE 9, CHAPTER 90 OF THE GENERAL STATUTES OF NORTH CAROLINA,
THE NORTH CAROLINA BOARD OF NURSE EXAMINERS, AND
AMY FISHER, FLORENCE WILSON, HILDRED HARRISON, GEORGE
L. CARRINGTON, H. L. BROCKMAN, A. L. DAUGHTRIDGE, SAMPLE
FORBUS, MIRIAM DAUGHTRY, ETHEL BURTON, FRANCES FARTH-
ING, MOIR B. MARTIN AND LOUTEN R. HEDGPETH.

(Filed 1 February, 1952.)

**1. Pleadings § 19c—**

A demurrer tests the sufficiency of a pleading, liberally construed, to
state a cause of action, admitting, for the purpose, the truth of every
material fact properly alleged.

**2. Mandamus § 2a—**

*Mandamus* lies to compel a public official to perform a purely ministerial
duty imposed by law, and will issue at the instance of the person who has
a present, clear, legal right to insist upon performance and who is without
other adequate remedy.

**3. Mandamus § 2b—**

Ordinarily, *mandamus* will not lie to control the exercise of discretion,
but may lie to compel a public official to act in a matter within his discre-
tion without in any manner controlling such action.

**4. Same—**

*Mandamus* will lie to control or review discretionary acts when it is
made to appear that the discretion has been abused, as where the action
complained of has been arbitrary or capricious.

**5. Same—**

Where the sole discretion of a public official is to determine the existence
of facts imposing upon him the right and duty to perform an act, proof
of the existence of such basic facts renders the act purely ministerial, and
*mandamus* will lie to compel its performance.

**6. Same: Hospitals § 9—**

Plaintiff hospital alleged that it had corrected all deficiencies and criti-
cisms pointed out by the joint accrediting boards as being necessary to
comply with the requirements for approval as an accredited school for
nurses, that it had met all minimum requirements for accreditation, that
the boards had arbitrarily refused to accredit plaintiff, and that plaintiff
would suffer irreparable damage by the removal of its school from the
accredited list. *Held:* The facts alleged, taken as true upon demurrer,
are sufficient to state a cause of action for *mandamus* to compel defendants
to accredit plaintiff's school of nursing. G.S. 90-159.

**7. Appearance §§ 2a, 2b—**

The filing of a demurrer on the ground that the complaint fails to state
a cause of action is a general appearance which waives any defects of
service. G.S. 1-103.

**8. Injunctions § 5: Mandamus § 4—**

In an action for *mandamus*, a motion for a temporary restraining order to preserve the *status quo* pending hearing upon the merits is controlled by G.S. 1-581 and not by G.S. 1-513, and the court may set the hearing less than ten days after notice of the order to show cause.

**9. Injunctions § 6: Mandamus § 4—**

In an action for *mandamus*, a court of equity may issue a mandatory preliminary injunction in proper instances upon a showing that plaintiff would suffer irreparable loss and injury unless the *status quo* be preserved until the hearing upon the merits.

BARNHILL, J., concurring.

APPEAL by defendants from *Phillips, Resident Judge,* at Chambers in Rockingham, 30 June, 1951, in action pending in Superior Court of RICHMOND County.

Civil action by plaintiff for a writ of *mandamus* to compel the defendants, The North Carolina Board of Nurse Examiners and the Joint Committee on Standardization, and the members thereof, to certify plaintiff's school of nursing as an accredited school for nurses in North Carolina, heard below on (1) plaintiff's motion for interim writ to preserve the *status quo* pending trial of the case, (2) defendants' counter motion to dismiss, and (3) defendants' demurrer to the complaint for failure to state facts sufficient to constitute a cause of action.

The court below overruled the defendants' motion to dismiss and also their demurrer, and allowed the plaintiff's motion for interim writ, requiring the defendants to continue the nursing school of plaintiff on the accredited list of nursing schools in North Carolina until the final determination of the cause.

From the orders entered effectuating these rulings, the defendants appealed to this Court, assigning errors.

*McLean & Stacy and Helms & Mulliss for plaintiff, appellee.*
*Lassiter, Leager & Walker for defendants, appellants.*

JOHNSON, J. The statutory machinery for licensing trained nurses and accrediting training schools for nurses in this State is codified in Chapter 90 of the General Statutes of North Carolina (G.S. 90-158 through G.S. 90-171).

G.S. 90-158 sets up "The North Carolina Board of Nurse Examiners," composed of five members, consisting of three registered nurses to be elected by the North Carolina State Nurses' Association and one representative each from the State Medical Society and the State Hospital Association.

G.S. 90-159 sets up a Joint Committee on Standardization, consisting of three members appointed from the State Nurses' Association and four members from the State Hospital Association. The statute directs that the Joint Committee on Standardization shall advise with the Board of Nurse Examiners in the adoption of regulations governing the education of nurses. The statute also provides that the Board of Nurse Examiners and the Joint Committee on Standardization shall "have power to establish standards and provide minimum requirements for the conduct of schools of nursing of which applicants for examination for nurse's license . . . must be graduates before taking such examination." A related statute, G. S. 90-162, also requires in effect that an applicant before being permitted to take the examination for licensure as a registered nurse shall have graduated from a school of nursing connected with a general hospital giving a three years course of practical and theoretical instruction, meeting the minimum requirements and standards for the conduct of schools of nursing set up and established by the Joint Committee on Standardization provided for in G.S. 90-159.

The record in the instant case indicates that this joint accrediting agency had formulated regulations establishing certain minimum requirements and standards for the conduct of schools of nursing in this State. The regulations so promulgated contain a stipulation that if a school meets the minimum requirements for accreditation, it shall be accredited for a period of one year, with provision that "accreditation shall be renewed annually provided the school continues to meet the minimum requirements for approval."

It thus appears that under the regulations, an accredited nursing school automatically goes off the approved list at the end of the year (30 June), unless the accrediting agency in the meantime takes affirmative action and renews the listing for another year,—and so on from year to year.

The plaintiff's school was on the list of accredited schools of nursing for the year ending 30 June, 1951. The record also shows that on 24 May, 1951, the Joint Committee on Standardization and The North Carolina Board of Nurse Examiners met in executive session for the purpose of accrediting schools of nursing for the succeeding year. At that meeting "a motion was . . . passed to the effect that Hamlet Hospital School of Nursing should not be accredited for the school year June 30, 1951-June 30, 1952." And by notice dated 29 May, 1951, the plaintiff was notified and directed by this joint accrediting agency to show cause before the joint boards in Raleigh on 11 June, 1951, why plaintiff's school of nursing should be listed on the accredited list for the year 30 June 1951, to 30 June, 1952. The plaintiff appeared with witnesses before the joint boards at the appointed time and place and at the conclusion of the meeting "a motion was . . . passed to the effect

that plaintiff's school of nursing should not be placed on the accredited list for the year June 30, 1951-June 30, 1952," and a directive to that effect was issued by the joint boards.

The plaintiff then instituted this action to compel accreditation. After the summons was issued and the complaint filed, the plaintiff obtained from Judge Clement on 21 June, 1951, a temporary order of injunction restraining the defendants from removing the plaintiff's school of nursing from the list of accredited schools in the State until the further order of the court.

After this order of injunction was issued, the plaintiff obviously realized that under the terms of the defendants' regulation for accrediting schools from year to year, the then current accreditation of its school would terminate by virtue of the rule itself on 30 June, 1951, thus rendering the preliminary order of injunction, which merely restrained the removal of plaintiff's school of nursing from the accredited list, insufficient to compel the defendants to place the school on the accredited list for the next year, so as to preserve the *status quo* pending final determination of the case. Accordingly, the plaintiff on 25 June, 1951, sought and obtained from Judge Clement an order requiring the defendants to appear before Judge Phillips in Rockingham on 30 June, 1951, and show cause "why an interim *mandamus* should not be entered . . . commanding them to continue the nursing school of plaintiff on the accredited list . . . until the final determination of this cause."

When the plaintiff's motion for this affirmative, interim relief came on for hearing, the defendants entered a special appearance and by motion to dismiss challenged the power of the court to hear the matter or issue any form of *mandamus*. The defendants also interposed a demurrer alleging that the complaint fails to state facts sufficient to constitute a cause of action. At the hearing on 30 June, 1951, Judge Phillips overruled the defendants' demurrer and motion to dismiss, and allowed the plaintiff's motion for what is inexactly denominated an "interim *mandamus*," requiring the defendants to continue the plaintiff's school on the accredited list until the final determination of the cause.

Thus the instant appeal challenges the action of the court below in (1) overruling the demurrer to the complaint, (2) disallowing the defendants' motion to dismiss, and (3) allowing the plaintiff's motion for interim writ compelling the defendants to keep plaintiff's school on the accredited list pending trial of the cause on its merits.

1. *The demurrer.*—The function of a demurrer is to test the sufficiency of a pleading, admitting, for the purpose, the truth of the allegations of fact contained therein (*Brick Co. v. Gentry,* 191 N.C. 636, 132 S.E. 800), with liberal interpretation in favor of the pleader. *Jones v. Raney Chevrolet Co.,* 213 N.C. 775, 197 S.E. 757. Thus, the defendants by demurring to the sufficiency of the complaint to state a cause of action, ad-

mit as true every material fact properly alleged, *Gaines v. Manufacturing Co., ante,* 340, 67 S.E. 2d 355; *Hall v. Dairies, ante* 206, 67 S.E. 2d 63; *Bryant v. Little River Ice Co.,* 233 N.C. 266, 63 S.E. 2d 547. See also *McLean v. Ramsey,* 221 N.C. 37, 18 S.E. 2d 705.

These in substance are the pertinent facts alleged in the complaint:

1. The plaintiff, non-profit corporation, has operated a hospital and training school for nurses in the Town of Hamlet since 1915. This school is the only training school for nurses between Charlotte and Lumberton, North Carolina, and between Raleigh, North Carolina, and Columbia, South Carolina. It serves the areas referred to for those desiring training in nursing. Its graduates are well-trained, well-qualified graduate nurses. They have maintained a creditable average in passing the State Board of Nurse Examiners.

2. In January, 1951, an inspector of the Joint Committee on Standardization inspected plaintiff's school and made certain criticisms and recommendations. The plaintiff has met these criticisms and recommendations, and the corrections suggested have been made.

3. On or about 1 June, 1951, plaintiff received notice from The North Carolina Board of Nurse Examiners and the Joint Committee on Standardization to show cause before these boards in Raleigh on 11 June, 1951, why the Hamlet Hospital School of Nursing should be listed on the accredited list of schools of professional nursing in North Carolina for the year ending 30 June, 1952. Attached to the notice was a memorandum advising the plaintiff that, because of certain deficiencies and criticisms listed, its "school of nursing fails to meet the minimum requirements and standards prescribed by the Joint Committee on Standardization and approved by The North Carolina Board of Nurse Examiners, as set forth in the 'Regulations for Schools of Nursing in North Carolina 1948' as amended." Attached to the complaint is a copy of this list of deficiencies and criticisms pointed out by the joint accrediting boards as constituting the particulars in which the plaintiff's school of nursing failed to qualify for accreditation. These deficiencies and criticisms may be summarized as follows:

(1). *Records.*—The Board's memorandum of deficiencies points to and quotes from its regulations requiring that "a good system of record be . . . maintained,"—so as to furnish a continuous history of each student's education and practice, indicating "the student's efficiency in work, attendance, and rating in her classes; lectures and demonstrations; the time she has spent in each department (day and night); absence from duty; sickness; and vacation." Here, the memorandum charges violations in these particulars: (a) "No record of required clinical instruction for students"; (b) senior students' final records showed substantially more class hours than shown in class roll book, thus reflecting violation of rule requiring accuracy of records; and (c) records "showed that an

entire new curriculum was not started for the pre-clinical class admitted September 20, 1950, but that they began anatomy and physiology classes with the June 20, 1950 group," in violation of regulation requiring that "a new curriculum shall be started with each new class."

(2). *Personnel Practices for Students.*—Here, the memorandum of the Board charges: (a) that "student nurses on night duty were working eight hours per night plus class hours during the day," in apparent violation of the regulation limiting time on duty, including clinical practice and class hours, to 48 hours per week; (b) that the student residence was without adequate graduate supervision, furnishings, and bath facilities (as shown by annual report), with no provision for "a reception room where the nurses could entertain their friends,"—in violation of regulations providing that nurses shall have "comfortable living quarters with provision for rest and recreation," and that "there shall be a reception room where nurses can entertain their friends."

(3). *Clinical Facilities.*—Here the memorandum of the Board charges: (a) failure of the affiliated hospital to maintain the required daily average of twenty patients in medicine and ten each in the pediatric and obstetric departments; (b) "Hospital equipment appeared inadequate for students to practice good patient care," for that there were only "two thermometers for 20 patients," and "one bed pan sterilizer for entire hospital and that not in use," and "majority of patients did not have individual equipment," (no regulation cited as prescribing specific standards as to required articles of equipment or use thereof) ; (c) failure to maintain separate nutrition and cookery laboratory for teaching course, in violation of specific regulation to that effect.

(4). *Library Facilities.*—The memorandum quotes the regulation requiring maintenance of a reference library of "at least one hundred well selected reference books," including "new editions and no duplications." Here, it is charged that the annual report lists only 75 books, and that the survey "showed that majority were out of date and there was no reference book on nutrition or dietetics."

(5). *Student Supervision.*—The memorandum charges violation of the following regulation: "Head nurses and floor duty nurses shall be employed as needed in order that the nursing service of the hospital may go on without interruption, and that student nurses may be properly taught and supervised throughout the twenty-four hour period." Here, the particular violations charged are: (a) "only one full time instructor, and she does not supervise the students during their pre-clinical nor subsequent practice on the wards"; (b) "the instructor in the nursing arts course is in charge of the third floor which is the medical-surgical service." This "does not give her time to teach and supervise the students properly"; (c) "Sixteen registered nurses were listed as employed

on the annual report; whereas there were only twelve the day of the visit, and one of these was working in the office."

4. "On 11 June 1951, pursuant to notice previously issued, plaintiff appeared with witnesses before The North Carolina Board of Nurse Examiners and the Joint Committee on Standardization, and reported what progress had been made in meeting the criticisms of the Nursing Educational Consultant and gave assurance and promised to fully comply with these requirements insofar as was possible; that irrespective of the efforts that plaintiff had made to comply with the criticisms and requirements, as aforesaid, and its solemn sworn promise to comply with these requirements, defendants arbitrarily, and without giving plaintiff an opportunity to meet its alleged minimum requirements, issued a directive ordering that the Hamlet Hospital School of Nursing should be taken off the accredited list of schools of professional nursing in North Carolina, and no new certificates be issued after 30 June 1951. That . . . the votes of the members of the aforesaid Committee to deny plaintiff listing on the accredited list of Nursing Schools in North Carolina was by very small majority. . . ."

5. "Plaintiff has now met all of the minimum requirements of defendants as set out in 'the memorandum of deficiencies and criticisms' previously served on the plaintiff."

6. "That the regulations promulgated by defendants under the division entitled, 'Accredited Schools of Nursing,' contains, among other things, the following:

" 'If the school meets the minimum requirements for accreditation, it shall be accredited for a period of one year. Accreditation shall be renewed annually, provided the school continues to meet the minimum requirements for approval.' "

7. "That if plaintiff's school of nursing is removed from the accredited list of Schools of Nursing by defendants, the graduates of said school under the regulations promulgated by defendants, will not be permitted to take the examination for license to practice their profession in North Carolina, regardless of their education and other qualifications."

8. "If defendants are permitted to remove plaintiff's nursing school from the accredited list of nursing schools, as intended by defendants, such removal will make it impossible for the said nursing school to continue in operation and will make it impossible for student nurses, except seniors, to complete their training in said school and to take the examination for practice of their profession in North Carolina."

9. Plaintiff, having operated its training school for nurses for more than 35 years, has invested many thousands of dollars in buildings, laboratories, and other equipment in addition to employing instructors, supervisors, and assistants to operate and maintain, in connection with its hospital, its training school for nurses. If defendants are permitted

to remove plaintiff's school from the accredited list of nursing schools in North Carolina, plaintiff will suffer irreparable loss and damage for which it has no adequate remedy at law.

10. "Plaintiff . . . is also entitled to a writ of *mandamus* commanding and requiring defendants to certify, or to continue to certify, plaintiff's school of nursing as an accredited school of nursing so long as it meets the minimum requirements for accreditation, as is authorized by Chapter 90, Article 9 of the General Statutes of North Carolina, which it has done."

The demurrer filed by the defendants has put to test the legal sufficiency of the complaint to state a cause of action entitling the plaintiff to a writ of *mandamus* compelling certification of plaintiff's school as an accredited school of nursing in this State. Thus an issue of law is raised, the answer to which requires application of the principles of law which control the facts, taken to be true as alleged.

*Mandamus* is the proper remedy to compel public officials, such as members of an administrative board, to perform a purely ministerial duty imposed by law, where it is made to appear that the plaintiff, being without other adequate remedy, has a present, clear, legal right to the thing claimed and it is the duty of the respondents to render it to him. *Perry v. Commissioners,* 130 N.C. 558, 41 S.E. 787; *Board of Education of Alamance County v. Board of Commissioners of Alamance County,* 178 N.C. 305, 100 S.E. 698; *Gulf Refining Co. v. McKernan,* 179 N.C. 314, 102 S.E. 505; *Hickory v. Catawba County,* 206 N.C. 165, mid. p. 173, 173 S.E. 56; *Poole v. Board of Examiners,* 221 N.C. 199, 19 S.E. 2d 635. See also *Brown v. Turner,* 70 N.C. 93; *Lyon v. Commissioners of Granville County,* 120 N.C. 237, 26 S.E. 929.

But as a general rule, the writ of *mandamus* may not be invoked to review or control the acts of public officers and boards in respect to matters requiring and depending upon the exercise of discretion. *Board of Education of Cherokee County v. Board of Commissioners of Cherokee County,* 150 N.C. 116, 63 S.E. 724; *School Commissioners of City of Charlotte v. Board of Aldermen of City of Charlotte,* 158 N.C. 191, 73 S.E. 905; *Board of Education of Alamance County v. Board of Commissioners of Alamance County, supra* (178 N.C. 305); *Wilkinson v. Board of Education of Johnston County,* 199 N.C. 669, 155 S.E. 562; *Moore v. Board of Education of Iredell County,* 212 N.C. 499, 193 S.E. 732; *Harris v. Board of Education of Vance County,* 216 N.C. 147, 4 S.E. 2d 328. In such cases *mandamus* lies only to compel public officials to take action, but ordinarily it will not require them, in matters involving the exercise of discretion, to act in any particular way. *Board of Education of Alamance County v. Board of Commissioners of Alamance County, supra.*

However, the rule is that the discretion must be exercised according to law; and *mandamus* will issue to control or review discretionary acts where it is made to appear that the discretion has been abused. 34 Am. Jur., Mandamus, Sections 69 and 184; 55 C. J. S., Mandamus, Section 63, p. 103. See also *Pue v. Hood, Comr. of Banks*, 222 N.C. 310, p. 315, 22 S.E. 2d 896; *Wilkinson v. Board of Education of Johnston County, supra* (199 N.C. 669, top p. 673). And it may be said to be abused within the foregoing rule when the action complained of has been arbitrary or capricious. 55 C. J. S., Mandamus, Section 63, p. 103; 38 C. J., pp. 598 and 599.

Also, "where the discretion is as to the existence of facts entitling the relator to the thing demanded, if the facts are clearly proved or admitted, *mandamus* will lie to compel action according to law, for in such case the act to be done becomes purely ministerial and the duty to perform it absolute." 34 Am. Jur., Mandamus, Section 69, p. 859; *Pue v. Hood, Comr. of Banks, supra* (222 N.C. 310). See also *Tucker v. Justices of Iredell County*, 46 N.C. 451; *Perry v. Commissioners, supra* (130 N.C. 558); *Gilliland v. Board of Education of Buncombe County*, 141 N.C. 482, 54 S.E. 413; *Goins v. Board of Trustees Indian Training School*, 169 N.C. 736, 86 S.E. 629; *Hickory v. Catawba County, supra* (206 N.C. 165); *Poole v. Board of Examiners, supra* (221 N.C. 199).

And "an act is none the less ministerial because the person performing it may have to satisfy himself that the state of facts exists under which it is his right and duty to perform the act." 55 C. J. S., Mandamus, Section 63, p. 101. See also *Pue v. Hood, Comr. of Banks, supra* (222 N.C. 310, bot. p. 314 and top p. 315); *States' Rights Democratic Party v. State Board of Elections*, 229 N.C. 179, 49 S.E. 2d 379; *Poole v. Board of Examiners, supra; Board of Education of Yancey County v. Commissioners*, 189 N.C. 650, 127 S.E. 692.

"It is one thing to provide that a thing may be done if it is made to appear that under the law a certain condition exists; it is another thing to provide that a thing may be done if in the opinion of a named party a certain situation exists." *Pue v. Hood, Comr. of Banks, supra* (222 N.C. 310, bot. p. 314).

Here, it is observed that the plaintiff does not challenge the legality of the exercise of the defendants' discretion in respect to the promulgation of any of the regulations setting the standards and minimum requirements for accreditation. Nor does the plaintiff question the validity of the anomalous rule under which accreditation automatically terminates at the end of the year unless in the meantime the accrediting agency takes affirmative action and renews the listing for another year. The plaintiff accepts the regulations and alleges full compliance. Specifically, it is alleged in the complaint that the plaintiff has corrected all the deficiencies and criticisms pointed out by the joint accrediting

boards as being the particulars in which the plaintiff's school failed to comply with the requirements for approval. It is further alleged that the "plaintiff has now met all the minimum requirements" for accreditation. The complaint also sets out the regulation promulgated by the defendants under which it is specifically provided that "accreditation shall be renewed annually, provided the school continues to meet the minimum requirements for approval."

Taking the foregoing facts as true, as we are required to do on demurrer, the defendants' duty to approve plaintiff's school becomes purely ministerial and the duty to perform absolute. These allegations, with the further averments that the defendants have refused arbitrarily to approve the plaintiff's school of nursing and that plaintiff will suffer irreparable damage by removal of its school from the accredited list, are sufficient to show that the plaintiff is without other adequate remedy and has a clear, legal right to the relief by *mandamus* as sought.

The complaint, when tested by the applicable principles of law, would seem to be sufficient to withstand the demurrer and entitle the plaintiff to a hearing on the issue of compliance.

Factually distinguishable are the decisions of this Court cited and relied on by the defendants, including *Ewbank v. Turner,* 134 N.C. 77, 46 S.E. 508. In that case the plaintiff, an unsuccessful applicant for license to practice dentistry in this State, sought by *mandamus* to have the court review and pass on his examination paper involving the application of intricate principles of scientific learning, found by the members of the examining board, in the exercise of their judgment, as experts, to be insufficient to justify a passing grade. The mode of dealing with an entirely different factual situation in the instant case suggests no such opening of a pandoran box as was sought by the plaintiff in the *Ewbank* case.

2. *The Motion to Dismiss.*—The defendants made a special appearance and moved the court to dismiss the plaintiff's motion for interim writ, assigning as the main ground for relief that the hearing was set to be held on less than ten days notice and that some of the defendants had not been served with process.

To the action of the court below in overruling the motion to dismiss, no error has been made to appear. The summons and complaint were duly served on Miriam Daughtry, Secretary of the Joint Committee on Standardization, and Secretary of The North Carolina Board of Nurse-Examiners, by the Sheriff of Wake County on 25 June, 1951, and the order to show cause was served on her, as secretary of each board, on 27 June, 1951. All the defendants were represented by counsel of record at the hearing before Judge Phillips on 30 June, 1951, and the defendants, through their counsel, on that date consented to the entry of an order continuing until the final determination of the cause the temporary re-

straining order previously entered by Judge Clement on 21 June, 1951. Moreover, the defendants' appearance in filing the demurrer to the complaint constituted a general appearance. Consequently, any defect of service on any of the defendants was waived by these voluntary general appearances. G.S. 1-103; *Reel v. Boyd*, 195 N.C. 273, 141 S.E. 891; *Abbitt v. Gregory*, 195 N.C. 203, 141 S.E. 587.

Also, the time fixed for the return of the order to show cause is governed by G.S. 1-581, and not G.S. 1-513. The controlling statute by its terms allows the judge to "prescribe a shorter time" than ten days. *Jones v. Jones*, 173 N.C. 279, 91 S.E. 960.

3. *The interim writ requiring defendants to keep plaintiff's school on the accredited list pending trial.*—The writ applied for and obtained was designated by counsel as an "interim writ of *mandamus.*" No such remedy or writ seems to be known to the language of the law. However, while *mandamus* is a legal remedy (*Maryland Casualty Co. v. Leland*, 214 N.C. 235, 199 S.E. 7), equity will lend its aid by injunction in *mandamus* proceedings in proper cases. Particularly is this so where, as in this jurisdiction, legal and equitable remedies are administered in the same courts, and when it is made to appear, as here, that the plaintiff would suffer irreparable loss and injury because of the delay incident to the remedy by *mandamus*. 55 C. J. S., Mandamus, Section 329; *Moore v. Jones*, 76 N.C. 188; *Lombard Iron Works v. Town of Allendale*, 187 S.C. 89, 196 S.E. 513; 28 Am. Jur., Mandamus, Section 43; 93 A. L. R., 1499, p. 1504. See also *Gaines v. Manufacturing Co., supra (ante* 340).

In the instant case, looking through form to substance, we are disposed to treat the interim writ issued by Judge Phillips as a temporary order of injunction, with direction that it remain in force to preserve the *status quo* until the further order of the court below. *Woolen Mills v. Land Company*, 183 N.C. 511, 112 S.E. 24. See also *Gaines v. Manufacturing Co., supra (ante* 340, bot. p. 346); *Springs v. Atlantic Refining Co.*, 205 N.C. 444, 171 S.E. 635; *Proctor v. Fertilizer Works*, 183 N.C. 153, 110 S.E. 861.

Upon this record, presented as it is by demurrer, we are constrained to the view that the plaintiff is entitled to be heard on the facts alleged. Therefore, the orders appealed from are affirmed. This necessitates a hearing on the plaintiff's allegations of full compliance with the minimum requirements for accreditation, and to that end the cause will be remanded by the court below to the Joint Committee on Standardization and The North Carolina Board of Nurse Examiners, the joint agency in which is vested the power to find the facts in the first instance, with direction that the plaintiff be given a hearing on the issue of compliance, after which the joint agency will report its findings and conclusions to the Superior Court of Richmond County for such further proceedings in the cause as may be appropriate, with the plaintiff's right to be heard in

the Superior Court on the report being preserved. To the end that the decision here reached may be effectuated, the cause is

Remanded.

BARNHILL, J., concurring: The Act as amended, now General Statutes Ch. 90, Art. 9, which is at least indirectly the subject matter of this action, created two administrative agencies: (1) a board of nurse examiners and (2) a joint committee on standardization. These two agencies, together with the individual members thereof, are defendants herein. For the sake of brevity and convenience of discussion I shall hereinafter refer to them as the Board and the Joint Committee.

The Legislature is the policy-making agency of the State government. The law-making function is assigned exclusively to it, and it alone can prescribe standards of conduct which have the force and effect of law. This function, except when expressly authorized by the Constitution—as is the case in respect to counties, cities, and towns—cannot be delegated to any other authority or body. *Motsinger v. Perryman,* 218 N.C. 15; *S. v. Harris,* 216 N.C. 746.

While the Legislature may not delegate the power to make the law, it may create an administrative agency and authorize it to make rules and regulations to effect the operation and enforcement of a law within the general scope and expressed general purpose of the statute. This authority, when granted, must be limited to the right "to fill in the details" in respect to procedural and administrative matters. It cannot lawfully include the power to make the law, for neither urgency of necessity nor gravity of situation arising from economic or social conditions allows the Legislature to abdicate, transfer, or delegate its constitutional authority or duty to an administrative agency. Hence, an administrative agency has no power to create a duty where the law creates none. *Motsinger v. Perryman, supra.*

The Legislature has the authority to regulate the practice of the professions. This includes the authority to establish minimum requirements to be observed by the schools which undertake to prepare applicants for license to practice such professions. It may likewise create administrative agencies to administer and enforce such laws. But standards of conduct to be observed can be prescribed only by the law-making branch of the government. Therefore, an act, the purpose of which is to regulate a profession or school, must establish the standards and minimum requirements; that is, standards of conduct must be prescribed by the Legislature. Only the power to enforce standards thus established may be delegated to a governmental agency. *Motsinger v. Perryman, supra.* This rule is inflexible.

There is no direct attack—on constitutional grounds—upon the statute under which defendants acted or purported to act. Even so, it is alleged

that the defendants, in withdrawing from plaintiff accreditation as a hospital school of nursing and refusing to place its name on the list of accredited schools for the year beginning 1 July 1951, was arbitrary and contrary to law. Therefore, if the Act prescribes no standards or minimum requirements for hospital schools of nursing in respect of the "deficiencies of Hamlet Hospital School of Nursing" listed by defendants as justification for their action in ordering "that the Hamlet Hospital School of Nursing not be listed on the said accredited list for the year beginning July 1, 1951, and ending July 30th, 1952," then their action was in fact arbitrary and contrary to law as alleged. This necessitates an examination of the statute to ascertain what standards, if any, are prescribed so as to determine whether said order of defendants is pursuant to and in furtherance of the enforcement of standards lawfully established. If not, the order is without force or effect and the restraining order was properly continued in force.

The Board is created by G.S. 90-158 and is empowered to give examinations to applicants for license to practice nursing, G.S. 90-162, on certain specified subjects, G.S. 90-163. The "prerequisites for applicants" are listed in G.S. 90-162. One of the requirements is that the applicant "shall have graduated from a school of nursing connected with a general hospital giving a three years' course of practical and theoretical instruction, which said hospital meets the minimum requirements and standards for the conduct of schools of nursing which may have been set up and established by the joint committee on standardization provided for in sec. 90-159."

The Act contains no specific standard to be observed or minimum requirement to be met by a hospital school of nursing. Instead, there is an attempt to delegate this law-making power to the Joint Committee. G.S. 90-159. It is there provided that "The joint committee on standardization shall advise with the Board of Nurse Examiners herein created in the adoption of regulations governing the education of nurses, and shall jointly with the North Carolina Board of Nurse Examiners have power to establish standards and provide minimum requirements for the conduct of schools of nursing of which applicants for examination for nurse's license under this chapter must be graduates before taking such examination." This does not serve to establish standards or to vest valid authority in the Joint Committee to do so.

However, the Act, in my opinion, does establish, by necessary implication, two standards or requirements for the conduct of hospital schools of nursing.

The applicant for license must have graduated from a school of nursing giving a three-year course of practical and theoretical instruction, G.S. 90-162, in specified subjects, G.S. 90-163. It would seem to follow by

necessary implication that the school must furnish a three-year course of instruction in the specified subjects. It may be the additional requirement that the school shall have a library containing approved reference books on the prescribed subjects of study and adequate laboratory facilities is likewise necessarily implied.

But the Act does not, either directly or indirectly, establish any standards or minimum requirements for the conduct of hospital schools of nursing in respect of the "records," "personal practices of nurses," absence on account of vacation or illness, hours of practical training, system of bookkeeping, reception room and bath tub facilities, or time for giving theoretical instruction, in respect to all of which it is charged plaintiff was deficient. No doubt the Legislature considered that these matters are best left to the hospitals themselves. The attempted delegation of authority to establish such requirements is without legal effect and any standards established by defendants in respect of such "deficiencies" are void. Any attempted enforcement thereof is of necessity arbitrary and in disregard of law. Therefore, the only course open to the court below was to continue the restraining order in full force and effect.

The objective of the law is to provide for a minimum standard of training for those who seek license as trained nurses and to ascertain by examination that such applicants possess the required degree of proficiency before being granted a license.

The duty of the defendant boards is to regulate, not eliminate—to enforce, not to establish—standards for the conduct of schools of nursing. And they must confine their activities to the enforcement of the standards established by the Legislature. Where there is no standard, they have no power to act.

No doubt the defendants have acted in absolute good faith. The statute purports to delegate to them the power to establish minimum requirements and standards for the conduct of hospital schools of nursing. This they undertook to do, believing no doubt, they had ample legal authority for their action. Even so, if some of the listed "deficiencies" of plaintiff are a fair indication of the "standards" prescribed by them, they have passed from the field of regulation into the hunting ground of unauthorized intermeddling. This is true notwithstanding their absolute good faith. The hours of active duty, the time for theoretical instruction, the personal conduct of trainee nurses while in school, and facilities for their entertainment are matters for the several schools to regulate, certainly in the absence of specific legislation to the contrary.

Likewise, in my opinion, the requirement that hospital schools of nursing must approach defendants each year, with hat in hand, and beg leave to be accredited once again for the ensuing year is arbitrary and unreasonable. As already noted, such schools must provide a three-year

course of training. Therefore, when the name of a school is once placed on the accredited list—granting for the present that defendants have the right to require accreditation—its name should not be removed from such list except after notice and full opportunity to be heard.

The enforcement of regulations such as those herein indicated will inevitably culminate in the elimination of many of the smaller schools of nursing and centralize the training of student nurses in a few large institutions. Such is not the purpose and intent of the Act. Small colleges and professional training schools play a vital role in the life of our State and, within reasonable bounds, their continued existence must be fostered and encouraged.

So long as defendants direct their efforts to enforcement of standards adopted by the Legislature to give assurance that student nurses shall receive adequate training in their chosen profession they are rendering a fine and useful service for which they should be commended. In seeking to accomplish this objective, however, they should always keep in mind the fact that this statute was not enacted for the benefit of nurses or to create a guild having the legal right to limit or proscribe competition, either of nurses or of hospital schools of nursing. It was enacted to promote the good health and general welfare of the people at large. Benefits accruing to nurses and schools are purely incidental. The Act can be justified and sustained on no other grounds. *S. v. Ballance,* 229 N.C. 764.

I concur in the direction that this cause be sent back to the Joint Committee to ascertain, upon hearing, whether plaintiff has now complied with the requirements of the Board which come within their legitimate field of action.