KINSTON TOBACCO BOARD OF TRADE, INC., ET AL., v. LIGGETT & MYERS TOBACCO COMPANY, A CORPORATION; AMERICAN SUPPLIERS, INC.; IMPERIAL TOBACCO COMPANY (OF GREAT BRITAIN & IRELAND), LIMITED; EXPORT LEAF TOBACCO COMPANY, A CORPORATION; AND KINSTON TOBACCO COMPANY, INC.

(Filed 11 June, 1952.)

1. **Injunctions § 1b—**

A mandatory injunction is the proper remedy in appropriate instances to restore a *status quo* but is not available to establish an entirely new *status*.

2. **Same—**

A mandatory injunction is never available as a temporary writ pending the final determination of the facts raised by the pleadings.

3. **Same: Agriculture § 11—**

A mandatory injunction will not issue at the instance of a tobacco board of trade to compel buyers of tobacco, who had theretofore been participating in a four-sale market, to participate in a like manner in a fifth sale established by resolution of the tobacco board of trade.

4. **Constitutional Law § 8c: Agriculture § 9—**

While the General Assembly has authority within constitutional limitations to regulate the sale of leaf tobacco upon the auction markets of the State as a business affected with a public interest, it may delegate such power to an administrative agency only to the extent of "filling in the details" within the general scope and express purpose of a statute which prescribes the standards.

5. **Same—**

A tobacco board of trade is without authority to require purchasers of tobacco, who had been participating in a four-sale market, to participate in like manner in a fifth sale established by resolution of such board in the absence of statutory provision prescribing a standard by which the

number of sales at tobacco auction warehouses may be determined.  G.S. 106-465.

APPEAL by defendants from *Stevens, J.*, 6 and 13 October, 1951, LENOIR.  Reversed.

This suit was instituted by the Kinston Tobacco Board of Trade, Inc., for the purpose of obtaining a mandatory injunction which would require each of the defendants to provide buyers or other purchasing agencies upon a fifth sale established by the plaintiff for the 1949 and subsequent seasons of the Kinston tobacco auction market.

The Kinston Tobacco Board of Trade, Inc., hereinafter referred to as the corporate plaintiff, is a corporation organized under authority of G.S. 106-465 for the purpose of making reasonable rules and regulations for the economic and efficient handling of the sales of leaf tobacco at auction on the warehouse floors of the Kinston tobacco market.  The membership is composed of tobacco warehousemen and purchasers of leaf tobacco.  The corporate plaintiff adopted and maintained a constitution and bylaws, under which it maintained a sales committee which annually prepared a sales card or schedule and otherwise regulated in a reasonable fashion the sale of leaf tobacco upon said market.

The corporate plaintiff, through its appropriate committee, created a five-sale market for the 1949 and subsequent seasons, and directed that each buyer or purchaser of leaf tobacco upon the Kinston market should participate upon the fifth sale in substantially the same manner each was then participating upon the four-sale market.  The defendants for reasons satisfactory to themselves failed to place buyers or other purchasing agencies upon the fifth sale in compliance with this regulation, although each of the defendants has for many years maintained a satisfactory purchasing agency upon the four-sale market.

Thereafter on 24 September 1951, in order to force the defendants to comply with its rule and regulation with respect to the fifth sale so established, the corporate plaintiff adopted a resolution, which, after reciting the details relating to the establishment of the fifth sale and the reason and necessity therefor, directed that the defendants and other buyers of leaf tobacco upon the Kinston market should participate in the fifth sale as they had theretofore done on the four-sale market. This resolution demanded that each of the defendants, within 24 hours from receipt of notice thereof, place a buyer or other purchasing agent or agency upon each of the five sales in operation on the Kinston market, with instructions and authority to engage in the competitive bidding on each grade or type of tobacco reasonably comparable to the participation, bidding and purchasing of leaf tobacco on the four sales on which the said defendants are now participating in the operation of said market, and so

as not to indicate any discrimination against either of the five sales conducted by the corporate plaintiff in the operation of the Kinston market.

The defendants failed to observe and obey the mandate of said resolution, and this suit was instituted for the purpose of securing a mandatory injunction requiring the defendants to comply with the rules of the corporate plaintiff and its said resolution.

On 28 September, 1951, the summons was issued, the verified complaint filed, a temporary mandatory injunction issued, and a rule to show cause entered. The hearing upon the temporary mandatory injunction was set for 13 October, 1951. The fiat of the mandatory injunction was in substantially the language of the said resolution and required each of the defendants to comply strictly with the terms of said resolution.

The defendants failed to comply with the temporary order of the court with respect to the fifth sale, in the belief that the court is without power to compel them to participate upon said fifth sale. On 1 October, 1951, each of the defendants were cited for contempt for failure to comply with said order. This citation was returnable on 6 October, 1951, and was dismissed at the hearing.

A volume of pleadings were filed by the defendants, all directed toward a dismissal of the suit and relief from the effects of the mandatory injunction. Upon the return date of the show cause order, all of the defendants appeared and demurred *ore tenus* to the complaint and with the permission of the court later filed written demurrers.

At the conclusion of the evidence and the arguments, all special appearances of the defendants were overruled, the demurrers *ore tenus* denied, and an order made continuing the temporary mandatory injunction to the final hearing.

From this order, each of the defendants appealed, assigning errors.

*Jones, Reed & Griffin and John G. Dawson for plaintiffs, appellees.*

*Fuller, Reade, Umstead & Fuller for defendant, appellant, Liggett & Myers Tobacco Company.*

*Victor S. Bryant for defendant, appellant, American Suppliers, Inc.*

*Of Counsel: Robert I. Lipton, Ralph N. Strayhorn, and Victor S. Bryant, Jr.*

*Lucas & Rand and Z. Hardy Rose for defendant, appellant, The Imperial Tobacco Company (of Great Britain & Ireland), Limited.*

*Albion Dunn for defendants, appellants, Export Leaf Tobacco Company and Kinston Tobacco Company, Inc.*

*Harrison M. Robertson, of Counsel for defendant, appellant, Export Leaf Tobacco Company.*

*James Mullen, of Counsel for defendant, appellant, Kinston Tobacco Company, Inc.*

VALENTINE, J.   The primary relief sought in this action is a mandatory injunction requiring the defendants to comply with the rules promulgated by the corporate plaintiff and its resolution of 24 September, 1951. This raises two questions: (1) Does a mandatory injunction lie, under the facts in this case? (2) Is the Kinston Tobacco Board of Trade, Inc., authorized by law to establish a fifth sale on the Kinston market and require that each of the defendants assign buyers, with instructions to bid and purchase, on the fifth sale substantially the same quantity of tobacco at substantially the same price as each had theretofore purchased upon each of the four sales theretofore conducted upon said market?

A mandatory injunction has a proper and necessary place in the administration of justice when the necessity is urgent and the right is clear, but an examination of the available authorities fails to disclose any case wherein such a process has been used to establish an entirely new status. Such a remedy is available and useful to restore a *status quo,* but nowhere employed to force an individual or private corporation to do something entirely beyond the scope of his business judgment and beyond the range of his own volition. *Telephone Co. v. Telephone Co.,* 159 N.C. 9, 74 S.E. 636; *Woolen Mills v. Land Co.,* 183 N.C. 511, 112 S.E. 24; *Keys v. Alligood,* 178 N.C. 16, 100 S.E. 113.

Furthermore, it is never available as a temporary writ pending the final determination of the facts raised by the pleadings. *Hospital v. Wilmington, ante,* 597.

In the case at bar, the defendants have participated in a satisfactory manner over a long period of time in the four-sale market, but for reasons satisfactory to themselves have declined to participate in the fifth sale. If the corporate plaintiff can, by the process here employed, require the defendants against their judgment to place buyers upon the fifth sale and thereby be forced to purchase a fifth more tobacco than they are now purchasing, then there is no reason why the same procedure could not be extended indefinitely and over the entire Bright Leaf Belt. This is revolutionary in principle and strikes at the heart of our system of free enterprise.

We therefore reach the conclusion that a mandatory injunction cannot properly be used upon the facts presented by this record.

The business of operating auction warehouses for the public sale of leaf tobacco is undoubtedly affected with a public interest and subject to reasonable public regulations, *Gray v. Warehouse Co.,* 181 N.C. 166, 106 S.E. 657; *Warehouse Assn. v. Warehouse,* 231 N.C. 142, 56 S.E. 2d 391; but this fact alone does not clothe the Kinston Tobacco Board of Trade, Inc., with the power to establish a five-sale market and invade private rights to the extent of requiring individuals or private corporations to participate on the fifth sale. The corporate plaintiff has no authority

to legislate. It cannot create a duty where the law creates none. The Legislature has the authority to regulate, within constitutional limits, the sale of leaf tobacco upon the auction markets of this State, and in doing so may prescribe standards of conduct to be observed by those who conduct auction warehouses as well as others participating in the sales. But this is a nondelegable power. *Motsinger v. Perryman,* 218 N.C. 15, 9 S.E. 2d 511, and cases cited; *S. v. Harris,* 216 N.C. 746, 6 S.E. 2d 854. The power to regulate may be delegated to an administrative agency only to the extent of "filling in the details" within the general scope and expressed purpose of the statute prescribing the standards. *Motsinger v. Perryman, supra.*

The statute under which the corporate plaintiff is organized is silent upon the question of the number of sales and prescribes no standard by which the number of sales may be determined. Therefore, in the absence of an agreement, either expressed or implied, the plaintiff has no right to establish a fifth sale and require the defendants to purchase thereon. *Hospital v. Joint Committee* (concurring opinion by *Barnhill, J.*), 234 N.C. 673, 68 S.E. 2d 862. Its authority is limited to the regulation of hours of sale, size of piles, and like details. Neither the statute, G.S. 106-465, nor its charter vests it with the authority it here seeks to exercise. In no event was the bylaw adopted by it relating to a fifth sale binding on defendants by virtue of their nonparticipating membership in the corporation or otherwise.

The large number of tobacco producers who were made parties plaintiff by order of the court are not members of the corporate plaintiff and certainly have no greater right to control the internal and private affairs of an individual or private corporation than the corporate plaintiff, and their presence in this litigation is therefore without effect upon the final determination of the questions here presented.

It follows, therefore, that the mandatory injunction was improvidently entered and that the demurrers *ore tenus* should have been sustained.

Reversed.