STATE OF NORTH CAROLINA Ex REL. UTILITIES COMMISSION v. THURSTON MOTOR LINES, INC., WILSON, NORTH CAROLINA.

(Filed 28 April, 1954.)

**1. Utilities Commission § 2—**

The Utilities Commission is a creature of the Legislature with only that authority which is vested in it by statute, which authority it may exercise only in accord with the standards prescribed by law.

**2. Carriers § 4—**

Motor carriers of freight in intrastate commerce who exchange freight in the course of delivery are not only given authority but are required to establish joint rates, and may provide for the division of revenues derived from such shipments by contract, subject only to the limitation that the contract shall not unduly prefer or prejudice any of the participating carriers. G.S. 62-121.28 (2).

**3. Same: Utilities Commission § 2—Authority of Commission to interfere with contractual division of revenue from interchanged freight.**

The Utilities Commission is given authority to intervene and vacate a contract for division of revenue from interchanged freight between two intrastate motor carriers only upon its finding after hearing that the contractual agreement between the carriers for the division of revenue from such shipments is, or will be unjust, unreasonable and inequitable, or unduly preferential or prejudicial as between the contracting carriers, and when an order is entered by the Commission without such jurisdictional finding, the cause must be remanded. A finding merely that the Commission does not accept the contractual practice of the carriers as being equitable is insufficient. G.S. 62-121.28 (5). The provisions of G.S. 62-121.28 (2), giving the Commission discretionary power to prohibit the establishment of joint rates, is inapplicable.

**4. Contracts § 26—**

A contract executed by persons *sui juris* who have the legal right to contract may be vacated or annulled by a stranger thereto, even though the stranger be a State agency, only in the manner and method provided by law.

APPEAL by defendant from *Nimocks, J.,* December Term 1953, WAKE. Error and remanded.

Investigation of a controversy existing between Thurston Motor Lines, Inc., hereinafter referred to as Thurston, and Helms Motor Express, Inc.,

hereinafter referred to as Helms, as to the division of joint rates or charges for the transportation of freight interchanged between the two carriers, instituted by the Utilities Commission.

The controversy relates primarily to shipments transported by Helms from Charlotte, N. C., to Raleigh, N. C., where they are transferred to Thurston for delivery at points in northeastern North Carolina.

On 19 August 1946 Thurston and Helms entered into a written agreement for the division of freight charges collected on shipments of freight interchanged between the two carriers. Neither party has canceled the agreement as therein authorized, and it has remained in full force and effect since it was executed.

The parties also had an informal agreement relating to shipments originating at points served by both but to be delivered in territory served by only one of them. Under this agreement, when a shipment originates at a point served by both, but is to be delivered in territory served only by Thurston, and is "picked up" by Helms and interchanged with Thurston at a base point for final delivery, or *vice versa,* the delivering carrier receives all the freight charges.

In April 1951 the Utilities Commission granted Thurston a franchise to transport freight between Charlotte on the one hand and points and places on its line in eastern North Carolina east of U. S. Highway 1 (not including Raleigh) to the Virginia State line and on and north of U. S. Highway 70 from Raleigh to the Atlantic. Helms already held a franchise under which it originated shipments in Charlotte destined for points in said territory. It interchanged such shipments at Raleigh for delivery at the destination point. Since said franchise was granted to Thurston, Helms' customers in Charlotte deliver to its pick-up truck shipments to be delivered to points within Thurston's territory above described. Helms transports these shipments to Raleigh where it interchanges with Thurston for final delivery. Thurston has been insisting that the "delivering carrier takes all" agreement applies to these shipments. As much more freight moves east from Charlotte than from east to west to points served by Helms, but not by Thurston, Helms has been protesting and settlement between the two carriers has been delayed.

The Utilities Commission took note of the controversy and, being of the opinion the situation was against the public interest, instituted an investigation. Hearings were had which culminated in the order entered by it in this proceeding.

The Commission found certain facts including the following:

"The agreement as executed provides that it shall remain in full force and effect, beginning September 1, 1946, until cancelled by either party by giving thirty days' notice in writing to the other party. There is no evidence that the agreement has been cancelled. There is evidence, how-

ever, that the delivering carrier, which can originate the traffic and transport it directly to its destination, but does not, takes all the revenue even though it performed a service only from the interchange point to destination, a local point on the delivering carrier. This appears to be a general understanding between these lines; however, this Commission does not accept such a practice as being equitable."

"Upon consideration of the facts in this proceeding and of the manner of dividing revenues, the Commission finds that the divisions of joint rates, charges, and revenues on traffic transported by Helms Motor Express, Inc., and Thurston Motor Lines, Inc., based on first-class rate prorate, are just, reasonable and equitable, and are not unduly preferential or prejudicial as between Helms Motor Express, Inc. and Thurston Motor Lines, Inc."

It thereupon ordered: "that Helms Motor Express, Inc. and Thurston Motor Lines, Inc. divide joint rates, charges and revenues accruing on traffic transported jointly by said carriers on basis of a first-class rate prorate."

Thurston petitioned for a rehearing. The petition was denied and it appealed to the Superior Court. When the appeal came on for hearing in the court below, the judge presiding affirmed the order of the Commission. Thurston excepted and appealed.

*Lucas, Rand & Rose and Ruark, Young & Moore for appellant.*
*J. Ruffin Bailey for Helms Motor Express, Inc.*

BARNHILL, C. J. If the Utilities Commission possessed authority to enter the order which is the subject matter of this appeal, we might well affirm. The record discloses a controversy between Thurston and Helms that warranted the investigation instituted by the Commission. Its findings of fact—except as to whether the shipments involved in this controversy are subject to solicitation—are supported by competent evidence, and it is not made to appear that the Commission acted arbitrarily, capriciously, or in disregard of law in entering the order from which Thurston appealed.

But the state of the record is such that we must withhold decision on the merits and remand the cause for further findings of fact which are jurisdictional in nature.

The Utilities Commission is a creature of the Legislature. It may exercise only such authority as is vested in it by statute. And such authority must be exercised by it in accord with the standards prescribed by law. *Coastal Highway v. Turnpike Authority*, 237 N.C. 52, 74 S.E. 2d 310; *Board of Trade v. Tobacco Co.*, 235 N.C. 737, 71 S.E. 2d 21; *S. v.*

*Harris,* 216 N.C. 746, 6 S.E. 2d 854; *Hospital v. Joint Committee,* 234 N.C. 673 (concurring opinion, p. 684), 68 S.E. 2d 862.

The rights of motor truck carriers of freight, and the power and authority of the Utilities Commission in respect to the division of charges made for the transportation of freight, where there has been an interchange of such freight between two carriers in the process of delivery, are prescribed in G.S. 62-121.28. The pertinent parts of said section read as follows:

"(2) Except under special conditions and for good cause shown every common carrier by motor vehicle authorized to transport general commodities over regular routes shall establish reasonable . . . joint rates, charges, and classifications with other common carriers by motor vehicle . . . In case of joint rates and charges between common carriers of any class or kind whatsoever, it shall be the duty of the carriers parties thereto to establish . . . just, reasonable, and equitable divisions thereof as between the carriers participating therein, which shall not unduly prefer or prejudice any of such participating carriers."

"(5) Whenever, after hearing, upon complaint or upon its own initiative the Commission is of the opinion that the divisions of joint rates or charges applicable to the transportation of property in intrastate commerce by common carriers by motor vehicle . . . are or will be unjust, unreasonable, inequitable, or unduly preferential or prejudicial as between the carriers parties thereto (whether agreed upon by such carriers or any of them or otherwise established), the Commission shall by order prescribe the just, reasonable, and equitable division thereof to be received by the several carriers; . . . The order of the Commission may require the adjustment of divisions between the carriers in accordance with the order from the date of filing the complaint or entry of order of investigation or such other dates subsequent as the Commission finds justified, and in the case of joint rates prescribed by the Commission, the order as to divisions may be made effective as a part of the original order."

Thus it appears that carriers of freight in intrastate commerce who exchange freight in the course of delivery not only *may* but they *"shall"* establish reasonable joint rates and "just, reasonable, and equitable divisions thereof as between the carriers participating therein . . ."

The practices, agreements and contracts thus authorized and required relate to the division of the revenue derived by carriers from shipments interchanged in the course of delivery. The one condition attached to the right to so contract is the provision that the contract "shall not unduly prefer or prejudice any of such participating carriers."

But common carriers are *quasi*-public corporations. A contract between two or more of them respecting the division of revenue might well

adversely affect the public interest by unduly preferring or prejudicing one of the parties to the contract, or in some other manner. Therefore, the Legislature vested in the Utilities Commission authority, either upon complaint filed or on its own initiative, to investigate contracts and agreements providing for the divisions of revenue; to vacate such agreements; and to establish reasonable and equitable divisions thereof.

The authority thus conferred upon the Commission, however, is not the unlimited blanket power to vacate and set aside agreements duly and lawfully made by parties possessing the capacity to contract.

When and only when, after hearing, it is made to appear to the satisfaction of the Commission, and it finds as a fact, that the agreed basis of division of revenue derived from interchanged shipments is or "will be unjust, unreasonable, inequitable, or unduly preferential or prejudicial as between the carriers parties thereto . . ." may it intervene, vacate the existing arrangement or agreement and substitute a reasonable and just basis for division of its own choosing.

This is the finding which vests it with the power to modify, vacate, or set aside the arrangement, agreement, or contract under attack. Common carriers and all other corporations and all persons *sui juris* have the legal right to contract, and a contract, once made, may be vacated or annulled by a stranger thereto, even though it be a State agency, only in the manner and method provided by law.

We are advertent to the fact the Commission found or concluded that it "does not accept such a practice as being equitable." But this anemic, negative finding is a far cry from the positive conclusion required by the statute and is wholly insufficient to vest the Commission with authority to vacate the existing agreement between Helms and Thurston and substitute its own plan of division. It could not accept. Neither did it reject. This will not suffice.

It follows that the order entered by the Commission and the judgment of the court below affirming the same must be vacated. The cause is remanded with direction that the proceeding be sent back to the Commission for further proceeding in accord with this opinion.

If the Commission finds as a fact that the written agreement and informal understanding or custom existing between Helms and Thurston is "unjust, unreasonable, inequitable, or unduly preferential or prejudicial as between the carriers parties thereto," it may vacate such contract and agreement and prescribe the rule for division contained in its former order or such other rule as may appear to it to be reasonable and just.

We are advertent to the provision contained in G.S. 62-121.28 (2) which reads as follows: "Upon investigation and for good cause, the Commission may, in its discretion, prohibit the establishment of joint rates or services." But that provision does not affect the question here

presented. In the first place it relates to the establishment of joint rates—not to the division of revenue. In the second place, the decision to prohibit such rates is to be made "in the discretion" of the Commission without any rule or standard to guide it. Whether this is an unlawful delegation of authority—for want of a standard prescribed by the Legislature—we do not decide. It must remain an open question until it is properly presented for decision.

For the reasons stated this cause is remanded for further proceedings in accord with this opinion.

Error and remanded.